**Opinion issued April 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00469-CV

_____

**JERRY CHRISTERSON AND MYRTLE CHRISTERSON, Appellants**

**V.**

**GORDON W. SPEER, LENORA SPEER, KEVIN SPEER,**
**AND ED PICKETT, Appellees**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. CV29050**

---

## MEMORANDUM OPINION

In this appeal from a summary judgment, we determine whether venue was proper and whether the statute of limitations bars the buyers' claims for fraud and deceptive trade practices brought against the sellers, who financed the buyers' purchase of their home. The buyers, Jerry and Myrtle Christerson, bought the home

from the sellers, Gordon and Lenora Speer, in 2000. The Speers loaned the Christersons $250,000 to finance the Christersons' purchase. In 2014, the Speers notified the Christersons that they owed outstanding interest on the note and began foreclosure proceedings. Before the foreclosure took place, the Christersons sold the home, and they used the proceeds to pay off the outstanding debt.

Later that year, the Christersons sued the Speers in Harris County District Court for fraud, breach of contract, and violations of the Texas Deceptive Trade Practices Act, the federal Truth in Lending Act, and the federal Racketeer Influenced and Corrupt Organizations Act. The Christersons also named Kevin Speer, who is the Speers' son and who acted as the real estate broker in the sale, and Ed Pickett, the Christerson's attorney, as defendants.

Because the property is located in Chambers County, and the sale took place in Chambers County, the seller parties moved to change venue from Harris County to Chambers County. The Harris County District Court granted the motion and transferred the case to Chambers County. After proceeding in Chambers County, the seller parties moved for summary judgment, which the trial court granted as to all of the Christersons' claims.

On appeal, the Christersons challenge the transfer of venue and contend that fact issues preclude summary judgment. Because we conclude that the trial court

properly transferred venue and that the Christersons' claims against the seller parties are barred by the applicable statutes of limitations, we affirm.

## BACKGROUND

Kevin Speer, a licensed real estate broker and agent, agreed to help his parents sell their home. In early 2000, the Christersons saw a "For Sale" sign in front of the Speers' home and called Kevin, who was the listed real estate broker.

Jerry Christerson met with Kevin and Gordon Speer regarding the property. Jerry told the Speers that he could afford to buy the property if he could pay $1,450 per month for 30 years. The Speers responded that they would try to arrange financing according to the Christersons' wishes.

The parties ultimately agreed on a sales price of $275,000. The Speers loaned $250,000—all but $25,000 of the sales price—to the Christersons as seller financing. Kevin drafted an earnest money contract, using the form required by the Texas Real Estate Commission (TREC). In a seller financing addendum, the earnest money contract included the terms and conditions for the loan.

Section 4D of the earnest money contract describes the financing agreement as "[a] promissory note from Buyer to Seller of $250,000.00, bearing 8.000% interest per annum, secured by vendor's and deed of trust liens, in accordance with the terms and conditions set forth in the attached TREC seller financing addendum." The seller financing addendum declares that the "Note shall be payable, [i]n monthly

3

installments of $1,450.00 including interest beginning 30 days after the date of the Note and continuing at monthly intervals thereafter for 30 years when the entire balance of the Note shall be due and payable."

A $250,000 note at 8% interest per annum is not discharged with monthly payments of $1,450 over 30 years. Under the "special provisions" section, the earnest money contract states: "NOTICE: The Seller Financed Note will negatively amortize based on a monthly payment of $1,450."

After the parties signed the earnest money contract, the Speers asked their lawyer, Ed Pickett, to draft the closing documents, including a deed of trust and a credit sale disclosure. The deed of trust, executed on May 13, 2000, provided for monthly payments of $1,450 and interim catch-up payments every 10 years:

A.    359 equal consecutive payments of $1,450 for 359 months;

B.    A payment due on July 1, 2010 for all accrued, unpaid interest to date "together with sufficient payment of principal to reduce the unpaid principal balance on such date to that which would have existed had this note been amortized with timely full amortization monthly installments of $1834.41 per month;"

C.    A payment due on July 1, 2020 for all accrued, unpaid interest to date, "together with sufficient payment of principal to reduce the unpaid principal balance on such date to that which would have existed had this note been amortized with timely full amortization monthly installments of $1834.41 per month."

D.    All unpaid, accrued interest and unpaid principal shall be due and payable on the final maturity date of April 1, 2030.

The accompanying credit sale disclosure notified the Christersons of the 8% annual percentage rate and the total finance charge of $410,387.60. It stated that the payment schedule was $1,450 for 359 months, due on the first day of each month.

The Christersons and the Speers closed the real estate transaction on May 16, 2000.

Following the closing, the Christersons began making timely monthly payments of $1,450. In August of 2013, the Speers notified the Christersons that a catch-up payment of approximately $46,000 in unpaid principal and interest was due on the loan. The Christersons did not pay that amount, but continued to make the regular $1,450 monthly payments.

In January of 2014, the Speers began refusing the Christersons' monthly payments and initiated foreclosure proceedings. The Christersons sold the home before foreclosure could occur and with the proceeds from the sale, they paid the amount outstanding on the Speers' loan.

The Christersons seek recovery for the Speers' alleged fraud and violations of consumer protection acts. The gravamen of the Christersens' complaint is that the Speers represented that $1,450 would cover the accrued interest and principal payments on the loan when in fact it did not, thus triggering the catch-up payments.

## DISCUSSION

The Speers challenge the Harris County district court's transfer of venue to Chambers County, contending that venue was proper in Harris County. The Speers challenge the Chambers County district court's summary judgment ruling, contending that their claims are not barred by the applicable statutes of limitations because they did not accrue until the Speers demanded a catch-up payment and that material issues of fact exist for each of their causes of action.

## I. Venue

We first address the Christersons' challenge to venue in Chambers County, because an improper venue decision requires reversal of the judgment and remand for a new trial. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b) (West 2017); *see Airvantage L.L.C. v. TBAN Props., #1, L.T.D.*, 269 S.W.3d 254, 257 (Tex. App.—Dallas 2008, no pet.).

### A. Standard of review and applicable law

An appellate court reviews a trial court's denial of a motion to transfer venue de novo. *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 347 (Tex. App.—San Antonio 2007, pet. denied) (citing *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260–62 (Tex. 1994)). In deciding whether the trial court properly determined venue, we consider the entire record. CIV. PRAC. & REM. CODE § 15.064(b); *see also Wilson*, 886 S.W.2d at 261–62.

6

Venue may be proper in more than one county under the venue rules. *See*, *e.g.*, *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998). Generally, courts will not disturb a plaintiff's choice of venue as long as the suit is initially filed in a county of proper venue. *Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 825 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *In re Henry*, 274 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

A trial court must consider as true all venue facts set forth in the plaintiff's pleading, unless an adverse party specifically denies those facts. *See* TEX. R. CIV. P. 87(3)(a). Once the adverse party specifically denies venue facts, the plaintiff must then respond with prima facie proof for each challenged venue fact. *Id.* "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Henry*, 274 S.W.3d at 190; *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.). On appeal, the trial court's determination that venue is proper in a particular county will be upheld if there is any probative evidence supporting venue in the county of suit. *Chiriboga*, 96 S.W.3d at 678 (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex. 1995)).

Section 15.002(a) of the Civil Practice and Remedies Code provides that all lawsuits shall be brought:

> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or
>
> (4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

CIV. PRAC. & REM. CODE § 15.002(a). The Christersons rely on the first venue provision, contending that they adduced prima facie evidence that Harris County is a county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

### B. Analysis

The Christersons allege that "events relating to the foreclosure and the subsequent injuries," including negotiations over telephone and email, the sale of the home, and the final payment of the outstanding loan, originated in Harris County.

To support these contentions, Jerry Christerson averred in his affidavit that he and his wife had moved to Harris County after the Speers demanded payment on the note. They received the foreclosure notice in Harris County, and they sold the home to a third party in a closing that took place at a title company in Harris County.

8

The Christersons' receipt of notices regarding foreclosure and sale of the home to a third party in Harris County, however, do not constitute events or omissions giving rise to their claims against the sellers. The undisputed venue facts are that the financing transaction that forms the basis of the Christersons' complaint took place in Chambers County, in connection with a purchase of real property located in Chambers County. The closing on the property, transferring its ownership from the Speers to the Christersons, took place in Chambers County. The negotiations concerning the financing and sale also took place in Chambers County. Thus, the alleged conduct underlying the Christersons' fraud and misrepresentation claims occurred in Chambers County. None of the sellers is alleged to have committed or performed any act or omission in Harris County relating to the Christersons' claims. We hold that the trial court properly granted the sellers' motion to transfer venue to Chambers County.

## II. Summary Judgment

The Christersons contest all of the summary-judgment grounds granted on their state law claims. [1] We affirm a summary judgment if any theory advanced in the sellers' summary-judgment motion is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). Among other grounds, the sellers

---

[1] The Christersons do not brief any claim of error concerning the trial court's summary judgment on their federal claims for violations of the Truth in Lending Act, Regulation Z, or under RICO. *See* TEX. R. APP. P. 38.1(i).

moved for summary judgment based on the applicable statutes of limitations. We address this ground because it is dispositive of the appeal. *See id.*; *Crockett Cty v. Klassen Energy, Inc.*, 463 S.W.3d 908, 910 n.1 (Tex. App.—El Paso 2015, no pet.) (citing TEX. R. APP. P. 47.1).

## A.     Standard of review and applicable law

A defendant is entitled to summary judgment on an affirmative defense if it conclusively proves all the elements of the affirmative defense. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant that seeks summary judgment on the basis of limitations must conclusively prove when the cause of action accrued and, if the plaintiff has pleaded the discovery rule or another defensive theory, conclusively negate its application. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If, as here, the summary judgment does not specify the grounds on which it was granted, the appealing party must demonstrate on appeal that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 79 (Tex. 1989).

All of the Christersons' claims are subject to either a two- or four-year statute of limitations. *See* CIV. PRAC. & REM. CODE § 16.004(a)(4) (West 2002) (four-year statute of limitations for fraud); *Id.* § 16.004(a)(5) (four-year statute of limitations

10

for breach of fiduciary duty); TEX. BUS. & COM. CODE ANN. § 17.565 (West 2011) (two-year statute of limitations under DTPA); *Barker v. Eckman*, 213 S.W.3d 306, 309 (Tex. 2006) (four-year residual statute of limitations set forth in section 16.051 of the Civil Practice and Remedies Code applies to breach-of-contract claims).

### B. Analysis

In their summary-judgment motion, the sellers contended that the Christersons' claims accrued when the parties closed on the sale and financing, approximately 14 years before their suit was filed. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (explaining that breach of contract claim accrues when contract is breached). The Christersons responded by pleading the discovery rule, asserting that their claims did not accrue until August 2013, when they received the Speers' letter demanding the first catch-up payment.

The Christersons arrive at the August 2013 accrual date under three defensive theories. First, they contend that the Speers fraudulently concealed the fact that the financing agreement obligated the Christersons to make catch-up payments in 10-year increments over the life of the loan because the catch-up payments were not included in the earnest money contract. Second, the Christersons claim that the discovery rule tolled the statute of limitations until they discovered the injury resulting from the Speers' wrongful acts and they did not discover their injury until the demand for catch-up payments. Third, they claim that, under a continuous-tort

or continuous-breach theory, the accrual date revived each time the Speers accepted the Christersons' monthly payments of $1,450.

### 1. The loan documents, signed in May 2000, disclose the fact that $1,450 in monthly payments does not fully satisfy the loan.

For limitations purposes, "a cause of action accrues when a wrongful act causes some legal injury." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). A "legal injury" occurs when facts come into existence that authorize a party to seek a judicial remedy. *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). Accrual occurs "even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V.*, 933 S.W.2d at 4. The determination of the date on which a cause of action accrued is typically a question of law. *Villarreal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 117 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Provident Life*, 128 S.W.3d at 221).

The closing documents, and in particular the deed of trust, placed the Christersons on notice that the terms of the loan required more than 359 monthly payments of $1,450 to fully amortize the outstanding loan. The documents that the Christersons signed at closing include a warranty deed with vendor's lien, a deed of trust, and a credit sale disclosure. The warranty deed recites that the consideration includes

[T]he . . . sum of [250,000.00], secured to be paid as evidenced by one certain Vendor's Lien Promissory Note . . . from Grantees herein to the order of Grantors herein in the principal amount of [$250,000.00], bearing interest from date at the rate of [8%] per annum on the principal balance from time to time remaining unpaid, said interest being payable monthly as it accrues . . . .

The terms set forth in the deed of trust obligate the Christersons to pay the loan "[i]n [359] equal consecutive monthly installments of [$1,450.00] each, including accrued interest." It further requires the Christersons to make three additional catch-up payments—in 2010 and 2020, respectively—of

all accrued, unpaid interest [from the prior 10-year period], together with sufficient payment of principal to reduce the unpaid principal balance on such date to that which would have existed had this note been amortized with timely full amortization monthly installments of $1,834.41 per month.

On the final maturity date in 2030, the Christersons were to pay "[a]ll unpaid, accrued interest and unpaid principal."

The credit sale disclosure, which the Christersons also received at closing, sets forth the loan's terms as follows:

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit at a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br><br>The amount of credit provided to you or on your behalf. | TOTAL AMOUNT OF PAYMENTS<br><br>The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE<br><br>The total cost of your purchase on credit, including your down payment of $25,000.00. |
|---|---|---|---|---|
| 8.0% | $410,387.60 | $250,000.00 | $660,387.60 | $275,000.00 |

13

Below these terms, the disclosure states that "[y]our payment schedule will be" 359 payments of $1,450.00, due on the first day of each month. The schedule cautions that, "The note payment schedule results in negative amortization which must be corrected every ten (10) years of the note term."

These loan document provisions, taken together, notified the Christersons that the 359 payments of $1,450 per month would not fully satisfy their loan obligation at the end of 30 years. Texas adheres to the longstanding rule that, absent proof of mental incapacity, a party who signs a contract is presumed to have read it and understood it. *Cosgrove v. Cade*, 468 S.W.3d 32, 34–35 (Tex. 2015) (declaring that party who signs deed is presumed, as matter of law, to have immediate knowledge of omissions and mistakes in deed). The Christersons therefore are charged, as a matter of law, with knowing and understanding the contents of the deed and other closing documents upon their signing. *See id.* at 37. Because the law presumes that the Christersons read and understood the closing documents, as a matter of law, they knew or should have known when they executed those documents of any discrepancy between the terms of the loan as they understood them and the terms set forth in the closing documents. [2]

---

[2] In their reply brief, the Christersons, citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992), claim that the deed of trust lacks the specificity required to form a binding agreement because it mentions neither the amount financed nor the interest rate for the loan. A written contract, however, may be comprised of multiple documents. *See Fort Worth Indep. Sch. Dist. v. City of Fort*

The loan document disclosure negates application of the discovery rule in this case as a basis for deferring accrual of the limitations period beyond the closing date. Under the discovery rule, accrual is deferred when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *S.V.*, 933 S.W.2d at 6 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)); *see also* BUS. & COM. CODE § 17.565 (statutorily incorporating discovery rule by allowing consumer to bring DTPA claim "within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice").

For claims for breach of contract, "diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'" *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Via Net*, 211 S.W.3d at 315). Similarly, when a party has had a reasonable opportunity to review

---

*Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). The other documents executed at closing, including the warranty deed with vendor's lien and the credit sale disclosure, identify the amount financed and the interest rate that applies to the loan, and thus supply the terms missing from the deed of trust. We construe these documents together and conclude that they contain sufficient specificity in the material terms necessary to notify the Christersons of their repayment obligations. *See id.* (explaining that court may construe multiple documents as if they were part of single, unified agreement).

a contract's terms before signing the contract, the party may not avoid those terms by claiming fraudulent inducement. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (rejecting plaintiff's claim that defendants fraudulently induced him to sign written release where plaintiff explained that he did not read release he was signing because he was "in a hurry" and did not have his reading glasses with him); *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (where parties read and had opportunity to discuss contracts before signing, defendant's failure to separately disclose forum-selection clauses did not constitute evidence that defendant fraudulently induced plaintiff).

### 2. Under the Texas Supreme Court's decision in *Cosgrove v. Cade*, the Speers' demand for payment did not revive the accrual date.

The Christersons also claim that the Speers' demands in 2013 and 2014 that the Christersons increase their payments under threat of foreclosure constitute separate breaches of the loan agreement and revive their claims. The Texas Supreme Court, however, rejected a similar assertion in *Cosgrove*.

In *Cosgrove*, the parties executed a deed that failed to reflect their agreement that the sellers would retain all mineral rights to the property. *See* 468 S.W.3d at 35. When the sellers discovered the omission four years later, they asked the buyer to execute a correction deed, but the buyer refused. *Id.* at 35. The sellers sued, seeking reformation of the deed and damages for breach of contract, civil theft, and tortious interference with contract, among other claims. *Id.* Because more than four years

16

had passed since execution of the original deed, the buyer moved for summary judgment on limitations. *Id.* The sellers responded that their causes of action did not accrue until the buyer refused to execute the correction deed. *Id.* at 39.

The Texas Supreme Court rejected the contention that the later refusal to reform the deed delayed the accrual date for limitation purposes. *Id.* To hold otherwise, the Court observed, "would circumvent the statute of limitations by allowing an open-ended breach of contract claim" that offends public policies meant to preserve the accuracy, reliability, and stability of real property records as well as the duty of diligence owed by the parties in such transfers. *Id.* Like the plaintiffs in *Cosgrove*, the Christersons seek to recast later conduct performed under the terms of the financing agreement as an independent breach of the original sale and financing agreement. *See id.*

We apply the holding in *Cosgrove* to the facts presented in this case and reject the contention that the Christersons' claims did not accrue until 2010. The Christersons' claims for breach of contract accrued, and thus the limitations period commenced, when the Speers and the Christersons signed the closing documents in 2000. The closing documents, including the deed of trust, reflect repayment terms that differ from the terms of the agreement the Christersons claimed to have made. *See id.* at 39 (explaining that claim for breach of contract accrues when contract is breached).

### 3. The acceptance of payments under the loan does not constitute a continuing tort.

The Christersons' claim that the accrual of their tort claims was delayed under a continuing tort theory also is unavailing.[3]  A continuing tort is an ongoing wrong, causing a continuing injury that does not accrue until the tortious act ceases.  *Rogers v. Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied).  Repeated injury proximately caused by repetitive wrongful or tortious acts may constitute a continuing tort, but a continuing injury arising from one wrongful act does not.  *Compare Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied) (applying continuing-tort rule to repeated use of mistakenly prescribed medication; each use created separate injury and cause of action for damages was not complete and did not accrue until wrongful conduct ended) *with Rogers*, 162 S.W.3d at 290 (holding that bank's periodic collection of fees as purported trustee of nonexistent trust did not constitute continuing tort; all injury arose from bank's single act of usurping control over property).  Unlike conduct constituting a continuing tort, the Christersons' monthly payments, as well as the Speers' later demand for the catch-up payment, all stem from conduct that occurred before and at the closing and pursuant to the written documents that both

---

[3]     The Texas Supreme Court has "neither endorsed nor addressed" the continuing tort doctrine.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005).

parties executed at that time. We hold that the trial court correctly granted summary judgment based on the statute of limitations bar applicable to their claims.

### 4. The trial court acted within its discretion in rejecting a claim of spoliation as a basis for denying summary judgment on limitations.

Finally, the Christersons contend that the Speers spoliated evidence because they could not produce the original promissory note that the Christersons contend reflected the parties' agreement to accept $1,450 in monthly payments for 30 years to satisfy the loan. The Christersons complain of the trial court's implicit refusal to deny summary judgment as a spoliation sanction. Because the trial court granted the Speers' motion for summary judgment, we presume that the court considered and rejected the Speer's request for a spoliation presumption. *See Clark v. Randalls Food*, 317 S.W.3d 351, 356 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We review a trial court's ruling on a request for a spoliation remedy for an abuse of discretion. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014).

Parties have a duty to reasonably preserve discoverable evidence. *Id.* at 16–17 (citing *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003)). The party alleging spoliation bears the burden of establishing that the nonproducing party had a duty to preserve the evidence. *Id.* at 20 (citing *Wal-Mart Stores*, 106 S.W.3d at 722). The Christersons point to the Speers' failure to produce the promissory note in response to discovery requests, coupled with the Speers' admission that they never

19

provided the Christersons with a copy of the promissory note. The Christersons contend that these admissions show that the Speers caused the destruction of material evidence, precluding summary judgment on limitations. The evidence about the note in the record is that the Speers, after a thorough search, were unable to find it. This evidence does not demonstrate that the Speers destroyed the note or owed a duty to preserve it beyond the passing of the limitations period. Because the Christersons did not meet their burden to adduce evidence demonstrating that spoliation occurred, the trial court did not err in rejecting their spoliation request.

## CONCLUSION

We hold that transfer of venue from Harris County to Chambers County was proper and that the trial court did not err in granting summary judgment based on the applicable statutes of limitations. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Huddle.