# IN THE SUPREME COURT OF TEXAS

══════════
No. 19-0334
══════════

BROADWAY NATIONAL BANK, TRUSTEE OF THE MARY FRANCES EVERS TRUST,
ET AL., PETITIONERS

V.

YATES ENERGY CORPORATION, EOG RESOURCES, INC., JALAPENO CORPORATION,
ACG3 MINERAL INTERESTS, LTD., GLASSELL NON-OPERATED INTERESTS, LTD.,
AND CURRY GLASSELL, RESPONDENTS

══════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
══════════════════════════════

**Argued December 2, 2020**

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE BOYD, JUSTICE BLAND, and JUSTICE HUDDLE joined.

JUSTICE BUSBY filed a dissenting opinion, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BLACKLOCK joined.

The Texas Property Code authorizes the correction of a material error in a recorded original instrument of conveyance by agreement. *See* TEX. PROP. CODE § 5.029. To be effective, the instrument correcting the error must be executed by each party to the original instrument "or, if applicable, a party's heirs, successors, or assigns." *Id*. § 5.029(b)(1). The issue here is when are an original party's heirs, successors, or assigns applicable, such that their

agreement is necessary to make the correction.

In this case, the court of appeals considered whether the original parties could validly agree to correct a mistake in the original instrument of conveyance, after a third party acquired an interest. The court concluded that the original parties could no longer correct their mistake solely by their agreement after an assignment. 609 S.W.3d 140, 149 (Tex. App.—San Antonio 2018). The court reasoned that the assignment or sale of an interest in the property by an original party triggered the "if applicable" clause, requiring the joinder of the assign for a material correction. *Id*. at 148. In short, the court held that a validly executed correction instrument under section 5.029 must be signed by the property's current owners.

We do not agree that a correction instrument's validity under 5.029 invariably depends on the consent of an assign or subsequent purchaser. Rather, we understand the "if applicable" clause to provide a substitute person or entity to sign when a party to the original conveyance is unavailable to sign a correction instrument for a material error. Because we disagree with the court of appeals' interpretation of the "if applicable" clause as the statute's method for protecting the property interests of subsequent purchasers, we reverse and remand.

## I. Background

The property at issue was once part of an inter vivos trust created by Mary Francis Evers. Included in that trust were several property interests in DeWitt and Gonzales Counties. A few months before Mary's death in 2003, she amended her trust to allocate its property to her descendants.

The 2003 amendment provided that the trust property was to be divided among four of

Mary's children:  Mariellen Evers Dyal, Sandra Evers Pierce, Jamie Evers Drago, and Eben John Evers (referred to as "John" hereinafter).  Although the trust property was to be divided into four equal shares, the share allocated to Mary's son, John, was to "be distributed" to the Trustee "to hold in a separate trust," designated as a supplemental-needs trust.  Mary's inter vivos trust named Broadway National Bank as Trustee (hereinafter referred to as the "Bank" or "Trustee").  Under the terms of John's supplemental-needs trust, the Trustee was to "apply for the benefit of [John] such amounts from the income or principal as the trustee in [its] sole discretion may from time to time deem necessary or advisable for the satisfaction of [John's] supplemental needs."  If John's supplemental-needs trust did not terminate within his lifetime, the trust was to terminate on his death, and the remaining trust estate divided equally between one of Mary's daughters, Jamie Evers Drago, and one of her grandsons, Mike E. Dyal, or their respective descendants per stirpes.

In 2005, the Bank, acting as trustee of Mary's trust, executed a mineral deed that conveyed the trust's mineral interests in DeWitt and Gonzales Counties to her children as designated by Mary in the 2003 trust amendment.  In the 2005 Mineral Deed, John received an undivided 25 percent interest in fee simple, which the Bank asserts was a mistake.  To correct the error, the Bank, as Trustee, filed a Corrected Mineral Deed in 2006, explaining that John was only entitled to the distribution of a life estate in the minerals conveyed in the 2005 deed.  The 2006 Corrected Deed also identified those whom Mary had designated to receive what remained of John's share of the trust property at his death.  The 2006 Corrected Deed, like the 2005 Mineral Deed it was meant to replace, was signed only by Broadway National Bank, Trustee of

3

the Mary Frances Evers Trust. Because some of the mineral interests described in the 2006 Correction Deed were already under lease to Yates Energy Corporation, the Trustee sent copies of the recorded 2006 Correction Deed to Yates with instructions to pay royalties to the grantees.

Several years later, John executed a Royalty Deed, dated February 1, 2012, conveying his royalty interests from oil and gas leases in DeWitt and Gonzales Counties to Yates. The leases covered the mineral interests that the Trustee had conveyed to John in the 2005 Mineral Deed. Yates assigned 70 percent of the royalty interests acquired from John to EOG Resources, Inc. pursuant to a farmout agreement and the remaining rights were assigned to others.[1] All of these instruments were dated as effective February 1, 2012, and recorded in the appropriate counties.

Although the assignment from Yates to EOG Resources was "effective as of February 1, 2012," EOG did not execute it until August of the next year. Meanwhile, a title attorney working with EOG Resources raised several questions about the extent of John's royalty interests. In a memorandum titled "Summary of Comments and Interpretations," EOG's attorney discusses his thoughts about the relevant documents, which he identified as the recorded 2005 Mineral Deed, the recorded 2006 Correction Deed, the unrecorded 2003 Amendment to the Mary Frances Evers Trust, and the recorded Royalty Deed from John to Yates, dated February 1, 2012.

The court of appeals summarizes this memorandum, beginning with the 2006 Correction Deed, whose validity the attorney questioned. The attorney noted that this correction instrument

---

[1] Those obtaining assignments of the remaining rights included Jalapeno Corp., EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassell, DKE Dyersdale, Inc., Cathy Dohnalek, Walter H. Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc.

did not comply with the statute because it was executed only by the Trustee, and not also by John and his siblings, who were the grantees in the 2005 Mineral Deed. The court of appeals' summary continues:

> To further complicate matters, the title attorney indicated the 2003 Trust Amendment could be interpreted as only authorizing Broadway Bank to convey a life estate in the trust property to John, and in the event of such interpretation, then Broadway Bank could only convey what it was authorized to convey to John as opposed to the fee simple estate in minerals it conveyed in the 2005 Mineral Deed. The title attorney concluded that for the 2006 Correction Mineral Deed to be valid, an amended correction deed should be executed by "all of the parties to show that [John] and all of the [g]rantees to said [2005 Mineral Deed] accept the change of ownership in the [2006 Correction Mineral Deed]." The title attorney further concluded that if an amended correction deed was executed, it would affect the type of interest—life estate or fee—John conveyed to Yates Energy Corporation in the 2012 Royalty Deed and Assignment of Overriding Royalty Interest, and subsequently, the type of interest Yates Energy Corporation assigned to EOG Resources. The title attorney advised that if EOG Resources wanted to secure a full fee estate interest, it needed to obtain John's life estate interest from Yates Energy Corporation and assignments of overriding royalty from the remaindermen identified in the 2006 Correction Deed.

609 S.W.3d at 143–44. These concerns were subsequently communicated to the Bank by email, advising that EOG's title attorney had confirmed the need for an Amended Correction Deed for the Mary Frances Evers Trust.

In November 2013, the Bank, as Trustee, executed and recorded an Amended Correction Deed, which was signed by all of the parties to the original 2005 Mineral Deed. Like the 2006 Correction, the 2013 Amended Correction Deed advised that the 2005 Mineral Deed made an incorrect conveyance of a fee estate to John, who instead was entitled to only a life estate, with remainder interest identified as in the 2006 Correction. A few months after signing the Amended Correction Deed, John died.

5

John's death ignited this dispute over the extent of the 2012 conveyance to Yates. The Bank maintains that Yates and its assignees acquired only John's life estate in the disputed royalties, as described in the 2013 Amended Correction Deed. As Trustee, it argues that these royalties are now owned by the Remaindermen identified in the correction instrument. Conversely, Yates contends that John acquired full ownership of these royalties under the Trustee's 2005 Mineral Deed; the 2012 royalty deed from John to Yates likewise conveyed full ownership; and the 2013 Correction Deed did not change that or otherwise affect Yates's title.

To resolve this dispute, the Bank sought declaratory relief in the probate court. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011 (Uniform Declaratory Judgments Act). It named Yates and its assignees as defendants and the Remaindermen as necessary parties.[2] The Bank's suit asked the probate court to construe the title instruments and declare that the 2012 Royalty Deed conveyed John's life interest only to Yates and that title to John's mineral interests passed to the Remaindermen upon his death. The Remaindermen joined the Bank's claim against Yates and its assignees. Yates and its assignees answered, asserted affirmative defenses, and counterclaimed for breach of express warranty and declaratory relief. Their counterclaim sought to establish that: (1) the 2005 Mineral Deed was binding and enforceable; (2) the 2006 and 2013 Correction Deeds were invalid; and (3) Yates's status as a bona fide purchaser was irrelevant because of the invalidity of the Correction Deeds. Yates and its assignees also sought damages

[2] The defendants in the probate court included Yates Energy Corporation, EOG Resources, Inc., Jalapeno Corp., EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassell, DKE Dyersdale, Inc., Cathy Dohnalek, Walter H. Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. The Remaindermen were identified as Mike E. Dyal and the Westco Family Limited Partnership.

for breach of the Trustee's express warranty of title in the 2005 deed to John. All litigants sought their attorneys' fees, and all moved for summary judgment.

The probate court granted summary judgment for the Bank and the Remaindermen, declaring that: (1) the 2013 Amended Correction Deed was valid, conveyed to John only a life estate in the mineral interests, and effectively replaced the 2005 Mineral Deed; (2) Yates accordingly received only a life estate from John; and (3) what remained in John's supplemental-needs trust vested in the Remaindermen upon John's death. The probate court further concluded that Yates and its assignees were not bona fide purchasers because the 2006 Correction Deed provided notice to them as a matter of law.

Yates and its assignees appealed. Although "each party to the recorded original instrument of conveyance" executed the 2013 Amended Correction Deed, TEX. PROP. CODE § 5.029(b)(1), the appellate court held the correction instrument invalid and consequently concluded "it did not replace the 2005 Mineral Deed." 609 S.W.3d at 148 (citing TEX. PROP. CODE § 5.030(a)(1)). The court accordingly reversed the summary judgment, which granted the Trustee's motion, and the final judgment, which declared the Remaindermen to be the owners of the disputed property interests. *Id*. at 149–50. Finally, the court remanded Yates's counterclaim for breach of express warranty and related claim for attorneys's fees to the probate court for further proceedings. *Id*. at 150. A concurring justice agreed that the correction instrument was invalid, but disagreed with the court's construction of the Property Code in some respects. *Id*. at 150–53. (Alvarez, J. concurring).

The Bank and Remaindermen[3] appeal, complaining that the 2013 Amended Correction Deed complies with the Property Code's requirements for a material-correction instrument and that the court of appeals therefore erred in holding it invalid. Yates and its assignees respond that the 2013 Correction Deed is not only invalid, as the court of appeals' has determined, but is also barred by limitations. Thus, even were we to disagree with the court of appeals' application of the Property Code, Yates argues we should nevertheless render judgment barring the Bank's suit to enforce the amended correction instrument.

We begin with the issue the court of appeals found dispositive: Whether the execution of the 2013 Amended Correction Deed complies with Property Code section 5.029 and thus validly corrects a material error in the original 2005 Mineral Deed. *Id*. at 146.

## II. The Correction-Instrument Statutes

Section 5.029 is part of a group of statutes that provide for the correction of errors in a recorded instrument of conveyance with a subsequently recorded "correction instrument." *See* TEX. PROP. CODE §§ 5.027–.031 (providing for the use of correction instruments to remedy errors in real property conveyances).[4] Under these statutes, "[a] correction instrument replaces

---

[3] Remaindermen also present a new theory as to why they should prevail. They argue that the original conveyance in 2005 should be declared void because the Bank did not have authority as Trustee to convey the mineral interest in fee simple to John. Consequently, they submit, the 2006 Correction Deed is the valid, original conveyance of the property, and it conveyed only a life estate in the property to John. This theory was not presented to the probate court as a ground for summary judgment, nor was it argued in the court of appeals. The complaint is further inconsistent with the summary judgment rendered below in the Remaindermen's favor—a judgment they ask this Court to reinstate, among other things. The argument has not been properly raised or preserved for appellate review.

[4] *See also Tanya L. McCabe Trust v. Ranger Energy, LLC*, 531 S.W.3d 783, 794 (Tex. App.–Houston [1st Dist.] 2016, pet. denied) (noting that the correction-instrument statutes were added to the Property Code in 2011 in response to this Court's decision in *Myrad Properties, Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746 (Tex. 2009), which addressed the limited scope of correction instruments in the real-estate context).

and is a substitute for the original instrument" and is "(1) effective as of the effective date of the recorded original instrument of conveyance; (2) prima facie evidence of the facts stated in the correction instrument; (3) presumed to be true; (4) subject to rebuttal; and (5) notice to a subsequent buyer of the facts stated in the correction instrument." *Id*. § 5.030(a)–(b). Correction instruments may be used to correct both material and non-material errors. *See id*. §§ 5.028 (pertaining to non-material errors), 5.029 (pertaining to material errors).

The error here is material, and thus the correction instrument must comply with 5.029. That section provides in pertinent part that an instrument to correct a material error "must be":

> (1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct *or*, *if applicable*, a party's heirs, successors, or assigns; and

> (2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id*. § 5.029(b)(emphasis added). Thus, an instrument intended to correct a material mistake must be executed by each party to the original transaction, or by an appropriate alternate, and recorded in the relevant county to be a valid "substitute for the original instrument." *Id*. § 5.030(b).

The dispute here is about when a party's heirs, successors, or assigns are "applicable," such that their signatures are necessary to validate a material correction under the statute. The Bank argues that "a party's heirs, successors, or assigns" are merely substitutes whose signatures are unnecessary unless an original party is unavailable to execute the correction instrument. Yates responds that it is not the agreement of the original parties to the mistake that controls who must sign, but rather who controls the property at the time of the proposed correction. Thus, if

9

an heir, successor, or assign acquires an interest in the property before a correction instrument is properly executed and recorded, Yates contends, such an acquiring third party must join in the instrument to validate a material correction.

The court of appeals agreed with Yates. The court construed "or, if applicable" as a conditional clause, separating the statute's primary and alternative options as to who should sign and triggered by any transfer of ownership. 609 S.W.3d at 148. Because the phrase was not otherwise defined in the statute, the court relied on the common meaning of its words, reading "or" as "a disjunctive conjunction used 'to link alternatives'" and "if applicable" as "a conditional clause meant to apply when appropriate or relevant." *Id*. (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 76, 865, & 1232 (2002)). The court then reasoned that "which of the two separate ways a correction instrument making a material change must be executed depends on whether the condition outlined by the 'if applicable' provision is triggered." *Id*. Finally, the court concluded that anyone who acquired a property interest in the original conveyance—whether as an original party's heir, successor, or assign—was relevant and appropriate to sign the correction instrument:

> We hold the provision is triggered and a correction instrument making a material change must be executed by a party's heirs, successors, or assigns, as opposed to the original parties of the recorded instrument, if the property interest conveyed in the original instrument has been assigned or conveyed by an original party to that party's heirs, successors, or assigns.

*Id*. It was, the court explained, the current ownership interest of John's assigns (Yates's assignees) that made them "relevant parties who were required to sign" the correction instrument. *Id*.

### III. **Material Corrections under Section 5.029**

The Bank contends that a correction deed signed by all parties to the original deed is valid under 5.029, even though one of them no longer owns the property or others have acquired an interest. The Bank submits that 5.029 plainly permits the parties to an original conveyance to correct a material mistake, without having to resort to litigation. It also agrees that the statute allows for third parties to sign a correction instrument under certain circumstances. But the use of "or" indicates that, while permissible substitutes, those other parties are not necessary if all the original parties agree to correct their mistake. The Bank thus objects to the court of appeals' interpretive leap from the potential relevance of a third party to the original conveyance to a statutory requirement that such party sign the correction instrument. *See id.* ("John's successors and assigns were current interest holders at the time the 2013 Amended Correction Deed was executed; in other words, they were relevant parties who were required to sign the new deed.").

Whether 5.029 authorizes the original parties to the conveyance to correct a material error in a deed, or requires the joinder of others who subsequently acquire interests in the property, is a matter of statutory construction. Such matters are legal questions that we review de novo. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Our objective in construing a statute is to effectuate the Legislature's intent as we find it in the statute's text. *Id.*; *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999) (noting that the Legislature's words are the best guide to its intent). We do not consider statutory provisions in isolation but rather seek their meaning from the statute as a whole. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). We further "presume

11

the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). We rely on the plain meaning of the text "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We apply any definitions the statute supplies, but if a term is not defined, we "interpret the term according to its ordinary meaning." *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 208 (Tex. 2020).

Not surprisingly, the statute here does not define "or" or "if applicable." The court of appeals accordingly consulted a dictionary for the commonly understood meaning of these words. We do so as well. "Or" is "used as a function word to indicate (1) an alternative between different or unlike things, states, or actions," "(2) choice between alternative things, states, or courses," or "(3) the synonymous, equivalent, or substitute character of two words or phrases." *Or*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (ONLINE) (2021). Consistent with that definition, this Court has recognized that "or" is typically understood as a disjunctive term, meaning that either of the separated words or phrases may be employed without the other. *See, e.g.*, *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015) (interpreting "or" as indicating separate prongs in the Tort Claims Act's phrase "condition or use," either of which may be used to demonstrate a waiver of sovereign immunity); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 581 (Tex. 2000) (noting that separating two phrases with the conjunction "or" "signifies a separation between two distinct ideas"). "Applicable" is defined as "capable of being applied; having relevance" and "fit, suitable, or right to be applied."

12

*Applicable*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (ONLINE) (2021). Thus, we generally agree with the court of appeals that "if applicable" conditionally introduces the phrase "heirs, successors, or assigns," signaling that the phrase is meant to apply when relevant or appropriate.

The parties also have no apparent disagreement over the ordinary meaning of these words. They agree that an original party's "heirs, successors, or assigns" may execute a correction instrument, instead of the original party, when relevant and appropriate. But they disagree about what makes an original party's "heirs, successors, or assigns" relevant and thus an appropriate party to sign the correction instrument.

The Bank argues that the alternates are irrelevant when an original party is available and signs the correction instrument. It further submits that the original parties are the statute's primary alternative because they are in the best position to know the true intent of the original instrument. The court of appeals disagreed, however, holding that title to the property should determine relevance and who must sign. 609 S.W.3d at 148. The court reasoned that if an heir, successor, or assign of an original party exists, it is the appropriate party to sign a correction instrument under 5.029. *Id*. The appellate court thus views the "or, if applicable" phrase as a triggering provision in which the original parties must sign the correction instrument so long as there are no heirs, successors, or assigns; but if there are heirs, successors, or assigns, then the "if applicable" provision is triggered, and the relevant alternates must sign the correction instrument.

The Bank complains that the statutory text does not support the court of appeals'

13

preference for the joinder of alternates merely because they exist. We agree to the extent that nothing in the text of 5.029 indicates a preference one way or the other: Either that the Legislature intended for the original parties to sign, if they were available, or that it intended for an alternate to sign, once the alternate acquired an interest in the original conveyance. If the Legislature's intent was the latter, however, the Bank reasonably questions why it chose "if applicable" to express that intention, instead of a simply providing that correction deeds must include the signatures of all current property owners. The court of appeals, however, was persuaded to that view by a concern that the Bank's "interpretation would render the conditional clause, 'if applicable,' meaningless." *Id*.

Whether the "if applicable" phrase is triggered by the transfer of title or by the absence of an original party makes no difference when the alternative is the original party's heirs or successors.[5] Under either scenario, the original party is not available to execute a correction instrument and title is held by another. Thus, either party's interpretation is satisfied and neither renders the conditional clause meaningless. However, an original party's assignment of an interest in the property presents a different situation because the original party may remain

---

[5] The Legislature has defined the term "heir" to mean "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate," including the "decedent's surviving spouse." TEX. EST. CODE § 22.015. Corporations and other business entities do not have heirs, but they can have successors. In the classic sense of the term, the "successor" of a business entity is not an assignee, but rather refers to rights and obligations transferred by merger, consolidation, or other legal succession. *Enchanted Ests. Cmty. Ass'n, Inc. v. Timberlake Improvement Dist.*, 832 S.W.2d 800, 802 (Tex. App.—Houston [1st Dist.] 1992, no writ). Individuals, on the other hand, have heirs but are not ordinarily thought of having successors. *But see Howell v. Murray Mortg. Co.*, 890 S.W.2d 78, 83 (Tex. App.—Amarillo 1994, writ denied) (noting that in common parlance successor means anyone who follows and when used as a legal term applying to a natural person may refer to an estate administrator or other legal representative). The term's meaning "when used in a contract, depends largely on the kind and character of the contract, its purposes and circumstances, and context." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 894 (Tex. 2017) (citation omitted). In the context of this statute, the term "successors" fills the gap between "heirs" and "assigns," covering entities and legal representatives who succeed an original party other than as an heir or assign.

available to correct a material mistake in the original conveyance. Certainly, the existence of a subsequently acquired interest in the original conveyance is a common thread among these alternatives, but only in the instance of an assignment does a choice arise. Assuming that the statute requires that a choice be made, what in the statute's text makes the assign the prevailing choice?

The text of 5.029 merely provides that "the parties to the original transaction or the parties' heirs, successors, or assigns, as applicable may execute a correction instrument to make a material correction" and that the correction instrument "must be executed by [the original parties] or, if applicable, a party's heirs, successors, or assigns." TEX. PROP. CODE § 5.029(a), (b)(1). Nothing in this text indicates that an assign must assent to a correction instrument when each party to the original conveyance is available to correct their mistake by executing a correction instrument. Rather, when read along with the disjunctive "or," "if applicable" simply emphasizes that the phrase "party's heirs, successors, or assigns" may be relevant when the original party is unavailable and, in that case, may serve as a substitute. *See id*. Accordingly, section 5.029 is satisfied when all the original parties agree to sign the correction instrument. Because this section provides for unanimous agreement among the parties to an original conveyance as a means to correct a material error and does not otherwise provide that the existence of an assign must supersede or replace that method, we conclude that the court of appeals erred in holding that the statute requires the joinder of assigns to validate the correction instrument.

But Yates submits that underlying the court of appeals' application of the material-

correction statute is the common-sense notion that a correction deed that affects the interests of current title holders should not be effective unless signed by the current owners. Indeed, implicit in the court of appeals' preference for the assigns of an original party is the court's apparent concern about protecting the interests of subsequent purchasers.

The Bank concedes that this is a legitimate concern as well, but complains that the appellate court has erroneously addressed it. Rather than curtail who can execute a valid correction instrument under 5.029, the court should have turned to section 5.030, which is the Legislature's response to that concern. When properly construed, the Bank maintains, these provisions authorize a correction deed signed by all parties to the original deed under section 5.029, even if one of them no longer owns the property, but subjects the correction instrument to the interests of innocent purchasers under section 5.030.

As a contextual matter, we interpret related provisions in light of the statutory scheme as a whole. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). The correction-instrument statutes generally provide that a compliant correction instrument may be used to correct an "ambiguity or error that relates to the description of or extent of the interest conveyed." TEX. PROP. CODE § 5.027(a). These statutes also generally incorporate the protections of the recording statute by subjecting correction instruments to section 13.001 of the Property Code. *Id*. § 5.027(c). Under section 13.001, "[a] conveyance of real property or an interest in real property . . . is void as to" a bona fide purchaser "unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." *Id*. § 13.001(a). Section 13.001 further states that an "unrecorded instrument is binding" only "on a party to the

instrument, on the party's heirs," and on subsequent purchasers who are not bona fide purchasers. *Id*. § 13.001(b). A bona fide purchaser is one who "acquire[s] property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). "Notice may be constructive or actual." *Id*. Thus, if a correction instrument is not recorded before a bona fide purchaser obtains an affected property interest, sections 5.027 and 13.001 provide that the correction instrument has no effect on the bona fide purchaser. *See id*.

Once a correction instrument has the requisite signatures and is recorded, however, it is "effective as of the effective date of the recorded original instrument of conveyance." *Id*. § 5.030(a)(1). That means that a properly executed correction instrument, when recorded, "replaces and is a substitute for the original instrument." *Id*. § 5.030(b).[6] But consistent with section 13.001's protections for bona fide purchasers, one notable exception to section 5.030's retroactive effect exists: "A correction instrument is subject to the property interest of a" bona fide purchaser that was "acquired on or after the date the original instrument" was recorded "and before the correction instrument" was recorded. *Id*. § 5.030(c). Thus, even when a correction instrument is properly executed and recorded, a bona fide purchaser's property interest still controls if the purchaser acquired its interest prior to the correction instrument being recorded. *See id*. (protecting the property interest of a "subsequent purchaser for valuable consideration without notice").

Taken together, these provisions indicate that original parties to a deed can effectuate a

---

[6] Section 5.030(b) further states that bona fide purchasers "may rely on the [correction] instrument against any persons making an adverse or inconsistent claim." TEX. PROP. CODE § 5.030(b).

correction instrument under 5.029 without the signatures of subsequent purchasers or current property owners. *See id*. §§ 5.027, .030, & 13.001. If bona fide purchasers—as current property owners—were otherwise required to sign a correction instrument for it to take effect, the protection for bona fide purchasers afforded by those sections would be pointless. After all, those protections are necessary only when a bona fide purchaser has not consented to the change but still is affected by it—a situation that may occur when the original parties to an instrument all sign on to a correction instrument. That aligns with the important policy consideration of providing title stability to innocent purchasers. Thus, the statutory scheme contemplates that original parties can effectuate a correction instrument without the signatures of the current property owners. *See Rodriguez*, 547 S.W.3d at 838 ("When interpreting each provision, we must consider the statutory scheme as a whole.").

The Legislature could have written 5.029 to require that all current owners of the property must sign a correction instrument, but that is not what it says. And while 5.029 certainly permits an original party's "heirs, successors, or assigns" to sign a correction instrument if the original party is unavailable, the statute plainly does not require that they do so when the original parties all execute the correction. The statute's plain language and the Property Code's encompassing scheme, confirm that section 5.029(b)(1) is satisfied when all parties to the original transaction agree to correct a material mistake in the original conveyance. Because the 2013 Amended Correction Deed was executed and recorded in conformity with the Property Code, the court of appeals erred in declaring the correction instrument invalid. *See* TEX. PROP. CODE § 5.029(b).

## IV. Limitations

Yates and its assignees argue in the alternative that the Bank's lawsuit here is barred by limitations. Yates submits that the underlying litigation is in substance a suit to reform the 2005 Mineral Deed to which a four-year statute of limitations applies. According to Yates, that four-year period began to run when the Bank executed the 2005 Deed and thus expired long before the Bank commenced this litigation. Yates complains that the Bank has been allowed to circumvent limitations by nominally pleading their suit as a declaratory judgment action to construe the validity of the 2013 Correction Deed, when in substance it is a time-barred suit to reform the 2005 Mineral Deed. *See Cosgrove v. Cade*, 468 S.W.3d 32, 35 (Tex. 2015) (applying the residual limitations period to deed-reformation claims); *see also* TEX. CIV. PRAC. & REM. CODE § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.").

While we agree that the residual, four-year statute of limitations applies to reformation suits, we do not agree that the Bank's action here was such a suit. Causes of action and self-help provisions are not interchangeable concepts. A distinction thus exists between (1) seeking the judicial remedy of deed reformation and (2) voluntarily seeking to correct a deed by agreement. Parties attempting the latter are not limited to doing so within four years of their mistake. *See, e.g.*, *Garcia v. Reverse Mortg. Sols., Inc.*, No 04-18-00736-CV, 2019 WL 2996971, at *3 (Tex. App.—San Antonio 2019, no pet.) (holding that Tex. Civ. Prac. & Rem. Code § 16.051 "does not apply to a party filing a corrected instrument in the county's public records" pursuant to Tex.

Prop. Code § 5.029). Neither section 5.027, which pertains to correction instruments generally, nor sections 5.029 and 5.030, which pertain to material-correction instruments and their effect, mention any such time constraint. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) (noting the presumption that legislative omissions are purposeful). The Property Code does not require that parties correcting an instrument pursuant to 5.029 do so within four years of the mistake.

Nor does the residual statute of limitations provision suggest anything different. *See* TEX. CIV. PRAC. & REM. CODE § 16.051 ("Every action for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues."). That provision applies only to an "action," that is, "a cause of action subject to the statute of limitations;" it does not apply to a self-help remedy to correct an instrument outside the judicial system. *See Yowell v. Granite Operating Co.*, ___ S.W.3d ___, ___ (Tex. 2020); No. 18-0841, 2020 WL 2502141, at *10–11 (Tex. May 15, 2020) (holding a statutory "instruction to courts" is not "a cause of action subject to a statute of limitations"). Indeed, the very purpose of enacting section 5.029 was to allow parties to correct deeds without invoking the judicial process. *See* TEX. PROP. CODE § 5.029; *see also Myrad Props., Inc.*, 300 S.W.3d at 749–50 (noting the limitations for a consensual correction of a material mistake in a deed outside the judicial remedies of reformation and rescission); *Tanya L. McCabe Trust*, 531 S.W.3d at 794 (observing that the addition of the correction-instrument statutes to the Property Code in 2011 was in response to this Court's decision in *Myrad* addressing the limited scope of such instruments).

Yates, however, points to our decision in *Cosgrove v. Cade*, 468 S.W.3d 32 (Tex. 2015),

for the notion that, at bottom, the claim here is one for reformation that is time barred. In that case, sellers sued buyer over a land transaction. The sales contract stated that sellers retained all mineral rights, but the deed mistakenly conveyed the property in fee. *Id*. at 35. Over four years after executing the deed, seller demanded that buyer issue a correction deed, pointing to one of the closing documents that bound the parties to "fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the [sales contract]." *Id*. Buyer refused to correct the deed, and sellers sued, seeking "a declaratory judgment that [sellers] owned the mineral interests" based on the closing documents' requirement for cooperation in correcting errors. *Id*.

We held that the sellers' claims were time barred. Noting that "[a] plainly evident omission on an unambiguous deed's face is not a type of injury for which the" statute of limitations would be tolled, we concluded that the sellers' deed-reformation claim was too late. *Id*. at 36–37. Similarly, we held that sellers' contract claim was barred because sellers "were charged with notice—as a matter of law and upon execution of the deed—that the deed failed to retain their mineral rights." *Id*. at 40. "To hold otherwise," we said, "would circumvent the statute of limitations by allowing an open-ended breach of contract claim that would defy," among other things, our holdings regarding tolling and deed-reformation claims. *Id*. at 39.

Like the sellers in *Cosgrove*, Yates submits that the Bank has tried to revive a barred claim to reform a deed by characterizing it as something else. But *Cosgrove* is readily distinguishable because no correction deed existed in that case for the court to construe. The suit in *Cosgrove* was not about the validity of a correction instrument but about the buyer's refusal to

agree to a correction based on time-barred claims for breach of contract and reformation.

Critically, the Bank does not seek to reform the 2005 Deed through the judicial process but rather to avail itself of a non-judicial, statutory process. *See* TEX. PROP. CODE §§ 5.027–.031 (the correction-instrument statutes). By enacting Property Code section 5.029, the Legislature gave parties the ability to correct material mistakes in their deeds without resorting to lawsuits for reformation or rescission. Enforcing a correction instrument that complies with the Property Code therefore is not a judicial reformation of the original conveyance. If the Trustee and other parties to the original conveyance have properly executed the correction, they have themselves replaced the original deed and substituted the correction. *Id*. § 5.030(b). Section 5.029 thus provides the basis for the declaratory action here, but the statute does not require the parties correcting an instrument do so within four years of their mistake. We accordingly reject Yates's argument that the Trustee's suit to construe the Property Code's correction-instrument provisions and determine the validity of the 2013 Correction Deed was in substance a deed-reformation suit, subject to the residual, four-year statute of limitations.

## V. **Innocent Purchasers**

Some of the parties who acquired their interests from John through Yates seek a remand to the court of appeals to consider an argument not addressed in that court. They argued there that, even if the 2013 correction deed were valid, their subsequently acquired property interests were protected under section 5.030 because of their status as bona fide purchasers. The court of appeals considered the issue to be immaterial after determining the correction instrument invalid under section 5.029. But because we disagree with the court's reading of 5.029, the argument is

no longer immaterial and should be considered. We accordingly remand to the court of appeals for it to consider the parties' arguments in light of the summary judgment ruling that neither Yates nor its assigns are bona fide purchasers.

\* \* \* \* \*

In summary, we hold that the original parties to a recorded original instrument of conveyance may validly execute a correction instrument under section 5.029, even after a third party has acquired an interest in the original transaction. And although 5.029 permits an original party's "heirs, successors, or assigns" to sign a correction instrument "if applicable," the statute does not require that they do so when the original parties all execute the correction. *Id*. § 5.029(b)(1). A validly executed correction instrument replaces and is a substitute for the original instrument, but the correction may not affect the property interest of a bona fide purchaser. *Id*. § 5.030(b)–(c). Thus, to the extent that John's assigns are able to establish their status as bona fide purchasers, their interests are protected.

The judgment of the court of appeals is reversed and the cause remanded to that court for further proceedings consistent with this opinion.

_____
John P. Devine
Justice

**OPINION DELIVERED**: May 14, 2021

23