# IN THE SUPREME COURT OF TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/31/15 6:03:05 PM
KEITH E. HOTTLE
Clerk

No. 14-0346

BARBARA D. COSGROVE, INDIVIDUALLY AND AS THE TRUSTEE OF THE CHARLES AND BARBARA COSGROVE FAMILY REVOCABLE LIVING TRUST, PETITIONER

v.

MICHAEL CADE AND BILLIE CADE, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued March 24, 2015**

JUSTICE WILLETT delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE LEHRMANN, and JUSTICE BROWN joined.

JUSTICE BOYD filed an opinion dissenting in part, in which JUSTICE JOHNSON, JUSTICE GUZMAN, and JUSTICE DEVINE joined.

This deed-reformation dispute resolves whether a mistaken-but-unmistakable omission in an unambiguous warranty deed is the type of injury to which the "discovery rule," a limited exception to statutes of limitations, should apply. As the court of appeals opinion lamented, "we have no guidance from the Texas Supreme Court on how to apply [the discovery rule's inherently undiscoverable injury] standard to the body of law on deed reformation."[1] The stakes are high, as the reliability of record title contributes mightily to the predictability of property ownership that is so indispensable to our legal and economic systems.

---

[1] 430 S.W.3d 488, 503–04. Only one justice joined the court of appeals opinion. *See id.* at 508.

# EXHIBIT "A"

Today we expressly hold what we have suggested for almost half a century: Plainly obvious and material omissions in an unambiguous deed charge parties with irrebuttable notice for limitations purposes.[2] Also disputed in this case is whether Property Code section 13.002—"[a]n instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument"—provides all persons, including the grantor, with notice of the deed's contents as well.[3] We hold that it does. Parties to a deed have the opportunity to inspect the deed for mistakes at execution. Because section 13.002 imposes notice of a deed's existence, it would be fanciful to conclude that an injury stemming from a plainly evident mutual mistake in the deed's contents would be inherently undiscoverable when any reasonable person could examine the deed and detect the obvious mistake within the limitations period.

A grantor who signs an unambiguous deed is presumed as a matter of law to have immediate knowledge of material omissions. Accordingly, this grantors' suit was untimely, and we reverse the court of appeals' judgment.

## I. Background

Respondents Michael and Billie Cade sued Petitioner Barbara Cosgrove over two acres of land that Cosgrove purchased from the Cades in 2006 through a trust. The first condition listed under the "Special Provisions" clause of the parties' Real Estate Contract states, "Sellers to retain all mineral rights." But the notarized deed, which the Cades either initialed or signed on each page, granted the land in fee simple. The deed was signed and recorded in October 2006. One of the closing documents, the "Acceptance of Title and Closing Agreements," a form agreement prepared

---

[2] *See McClung v. Lawrence*, 430 S.W.2d 179, 181 (Tex. 1968).

[3] TEX. PROP.CODE § 13.002.

by the title company, bound both parties to "fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned real estate contract." It is undisputed that the deed mistakenly—but unambiguously—failed to reserve mineral rights.

Prior to entering into the contract, the Cades leased the mineral estate to Dale Resources, LLC, and soon thereafter Chesapeake Energy became operator of the lease. In 2009 and 2010, Chesapeake sent the Cades shut-in checks, which enabled Chesapeake to keep the non-producing lease in force by the payment of a shut-in royalty. In October 2010, Chesapeake sent a letter to the Cades informing them of their rights as royalty owners. That December, Michael Cade contacted Chesapeake to inquire about his royalty payments, and a Chesapeake representative responded there was a "problem" with the deed's mineral reservation. Within days, the Cades sent a demand letter to Cosgrove asking Cosgrove to issue a correction deed. Cosgrove replied that the statute of limitations barred any claims the Cades might have over the deed.

In February 2011, the Cades sued Cosgrove for a declaratory judgment that the Cades owned the mineral interests—in effect a suit to reform the deed. They also brought actions for breach of contract (that Cosgrove refused to execute a correction deed in contravention of the Acceptance of Title and Closing Agreements), fee forfeiture, civil theft, and tortious interference with contractual relationship. The tortious interference claim has a two-year limitations period.[4] The remaining claims each have a limitations period of four years.[5] A four-year period also applies

---

[4] TEX. CIV. PRAC. & REM. CODE § 16.003(a).

[5] *Id.* § 16.051.

3

to deed-reformation claims.[6] Cosgrove counterclaimed for a declaratory judgment that the Cades' claims were barred by limitations and the merger doctrine, and sought attorney fees.

Both parties moved for summary judgment. The Cades urged the trial court to declare as a matter of law that the 2006 deed did not convey mineral rights. They also argued that Cosgrove breached the sales contract by refusing to execute a correction deed. Cosgrove asserted that limitations and the merger doctrine barred the Cades' claims. The trial court ruled that the Cades' claims were time-barred and also denied their deed-reformation and breach-of-contract arguments. Cosgrove then sought attorney fees, which the trial court denied.

Both parties appealed. The court of appeals reversed the grant of summary judgment for Cosgrove, affirmed the denial of summary judgment for the Cades, and overruled Cosgrove's appeal for attorney fees as moot. Notably, while the court of appeals' judgment was 3-0, two justices declined to join the authoring justice's opinion, which stated the discovery rule delayed the accrual of limitations for a deed-reformation claim because "a mutual mistake in a deed is a type of injury for which the discovery rule is available."[7] Cosgrove then appealed to this Court.

## II. Discussion

### A. The Discovery Rule Does Not Apply in Plain-Omission Cases

There is generally a rebuttable presumption that a grantor has immediate knowledge of defects in a deed that result from mutual mistake.[8] The court of appeals plurality correctly notes that "[a]pplication of the presumption means that the limitations period on a claim to reform an

---

[6] *Brown v. Havard*, 593 S.W.2d 939, 943 (Tex. 1980).

[7] 430 S.W.3d at 502.

[8] *Sullivan v. Barnett*, 471 S.W.2d 39, 45 (Tex. 1971).

4

incorrect deed begins to run as soon as the deed is executed because . . . the grantor has actual knowledge that the deed is incorrect."[9] This Court has not strictly applied the presumption of knowledge rule because, as we noted many years ago, "[n]umerous exceptions are as well established as the rule itself."[10]

The court of appeals plurality did not apply the rebuttable presumption but instead applied the discovery rule, which defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury.[11] Courts apply the discovery rule in limited circumstances where "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."[12] Discovery rule cases focus on categorical "types of injury, not causes of action."[13]

A plainly evident omission on an unambiguous deed's face is not a type of injury for which the discovery rule is available. A generation ago, we held in *Sullivan v. Barnett* that certain circumstances may trigger a rebuttable presumption that a grantor has immediate knowledge of

---

[9] 430 S.W.3d at 494 (citing *Sullivan*, 471 S.W.2d at 45).

[10] *Sullivan*, 471 S.W.2d at 45.

[11] *Id. See also Gaddis v. Smith*, 417 S.W.2d 577, 581 (Tex. 1967) (discussing the extent to which Texas has adopted the discovery rule), *superseded by* Act of May 31, 1975, 64th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865, *repealed by* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 41.03, 1977 Tex. Gen. Laws 2039, 2064, as stated in *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985).

[12] *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). *See also S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996) (injury is "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence") (citing *Computer Assocs.*, 918 S.W.2d at 456); *accord Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (The discovery rule defers the accrual of a cause of action "until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action.").

[13] *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

defects in a deed that result from mutual mistake.[14] Once the presumption is rebutted, the

reformation claim does not accrue until the grantor actually knew, or in the exercise of reasonable

diligence should have known, of the mistake.[15] But we have never decided a case involving a plain

omission in an unambiguous deed.[16] *Sullivan* reserved the possibility of recognizing a rebuttable

presumption in plain-omission cases, but we never explicitly endorsed it, and we decline to do so

now. At execution, the grantor is charged with immediate knowledge of an unambiguous deed's

material terms.

We have noted that circumstances may exist where a party is charged with knowledge of a

mistake in a deed as a matter of law. For example, in *Brown v. Havard*, we implicitly recognized

the possibility that parties can be charged with knowledge of an obvious mistake: "Nor can it be

said that the mistake is so plainly evident as to charge [grantee] with the legal effect of the words

used."[17] Decades earlier, in *McClung v. Lawrence*, we distinguished mistakes about the legal effect

of a deed's terms from instances where "mineral rights had been entirely omitted from the deeds,

a fact plainly evident."[18] In *McClung*, we cited approvingly two court of appeals cases favoring

the bright line we adopt today:

- *Kahanek v. Kahanek*—"It is well settled . . . in suits to correct a mistake in a
  deed . . . if such actor be the grantor, then he is charged, as a matter of law, with

---

[14] 471 S.W.2d at 45 (delaying discovery of a mutual mistake in a deed when subsequent conduct lulled a party into a sense of security about the deed's contents).

[15] *See, e.g.*, *id.*

[16] *See, e.g., Brown*, 593 S.W.2d at 939 (involving an ambiguous deed).

[17] *Id.* at 944.

[18] 430 S.W.2d 179, 181 (Tex. 1968).

6

knowledge of the contents of his deed from the date of its execution, and limitation begins to run against his action to correct it from that date."[19]

- *Kennedy v. Brown*—Agreeing that at the time the deed is executed a party is charged as a matter of law with knowledge of whether the deed reserves mineral rights provided in the contract, at which time limitations begins to run.[20]

In plain-omission cases, *McClung* suggests, and we squarely adopt today, the rule stated by the courts of appeals in *Kahanek* and *Kennedy*: Parties are charged as a matter of law with knowledge of an unambiguous deed's material omissions from the date of its execution, and the statute of limitations runs from that date.[21] The Cades had actual knowledge of the deed's omission upon execution. They were charged, as a matter of law, with actual knowledge of what the deed included, and excluded, and limitations began to run from the date of execution. An injury involving a complete omission of mineral interests in an unambiguous deed is inherently discoverable—"a fact plainly evident," as *McClung* put it.[22] When a reservation of rights is completely omitted from a deed, the presumption of knowledge becomes irrebuttable because the alleged error is obvious. It is impossible to mistake whether the deed reserves rights when it in fact removes rights. In cases like these which involve an unambiguous deed, the conspicuousness of the mistake shatters any argument to the contrary.

---

[19] 192 S.W.2d 174, 176 (Tex. Civ. App.—Galveston 1946, no writ).

[20] 113 S.W.2d 1018 (Tex. Civ. App.—Amarillo 1938, writ dism'd).

[21] *McClung*, 430 S.W.2d at 181.

[22] *Id*.

## B. Section 13.002

While the Court has recognized that public records can impose an irrebuttable presumption of notice on a grantee to prevent application of the discovery rule,[23] we have yet to recognize circumstances where section 13.002 imposes constructive notice on a grantor as well. We do so today to the extent that public records filed under section 13.002 establish as a matter of law a lack of diligence in the discovery of a mistaken omission in an unambiguous deed. We do not impose an affirmative duty to search the public record; we only say that obvious omissions are not inherently undiscoverable.

The Cades' assertion that section 13.002 only provides them with notice of the deed's existence and not the deed's contents defies common sense and clashes with our precedent that mineral interest owners bear a high duty of due diligence to protect their mineral interests. We have stressed in other property-related cases that the duty of diligence sometimes includes the duty to monitor public records;[24] that public records can constitute constructive notice and therefore create an irrebuttable presumption of actual notice;[25] that parties in an arms-length transaction, such as a conveyance of property, must read the documents they sign;[26] and that without a showing of fraud, mineral interest owners may not claim a failure to understand what they were signing as

---

[23] *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617–18 (Tex. 2007) (per curiam).

[24] *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011).

[25] *HECI Exploration Co.*, 982 S.W.2d at 887; *Ford*, 235 S.W.3d at 617–18 (public records in a grantor's chain of title generally create an irrebuttable presumption of notice).

[26] *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).

grounds for avoiding the transaction.[27] Reasonable diligence requires mineral interest owners to read and inspect their deeds to ensure their mineral interests are properly reserved.[28] The Cades' ability to monitor information contained in public records to discover their injury prevents that information from being deemed undiscoverable. The rationale we underscored in *HECI* for recognizing that public records constitute constructive notice likewise applies here: the "need for stability and certainty regarding titles to real property."[29] When it comes to obvious deed omissions, the accrual of a deed-reformation claim is not delayed. Section 13.002 establishes a lack of diligence in the discovery of a mistaken omission in an unambiguous deed as a matter of law.

Our recent decision in *Hooks v. Sampson Lone Star, Limited Partnership* addresses this issue in the fraud setting.[30] It recognizes that the date a cause of action accrues is normally a question of law, and the exercise of reasonable diligence is usually a question of fact, but "in some circumstances, we can still determine as a matter of law that reasonable diligence would have uncovered the wrong."[31] After thoroughly surveying our prior decisions, *Hooks* concludes, "when

---

[27] *See In re Bank of Am., N.A.*, 278 S.W.3d 342, 345 (Tex. 2009) ("The general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it.").

[28] *See HECI Exploration Co.*, 982 S.W.2d at 886 (recognizing that mineral interest owners bear some obligation "to exercise reasonable diligence in protecting their interests").

[29] *Id.* at 887.

[30] 457 S.W.3d 52, 59 (Tex. 2015).

[31] *Id.* at 58.

there is actual or constructive notice, or when information is 'readily accessible and publicly available,' then, as a matter of law, the accrual of a fraud claim is not delayed."[32]

*Hooks* makes two particularly relevant statements that we affirm in the plain-omission setting: (1) reasonable diligence includes examining "readily available information in the public record,"[33] and (2) "reasonable diligence should lead to information in the public record."[34] It follows that if *HECI* imposes an obligation on mineral interest owners "to exercise reasonable diligence in protecting their interests," and *Hooks* recognizes that "reasonable diligence should examine readily available information in the public record," then the Cades cannot claim they acted with reasonable diligence when they failed to notice a plain mistake when executing their deed, and the deed was readily available for inspection in public records for the remainder of the limitations period.

### C. The Cades' Remaining Claims

The Cades' remaining claims would be available only if they could reform the deed and prove superior right, which they cannot. Because the discovery rule does not apply to, and limitations begin to run against, an action involving a plain omission from an unambiguous deed from the date of execution, the Cades' remaining claims are barred. Execution of the deed irrefutably establishes the grantor's knowledge as a matter of law, so the Cades are prohibited from introducing evidence other than whether the deed was executed and notarized to establish when

---

[32] *Id*. at 59 (quoting *Ross*, 356 S.W.3d at 929).

[33] *Id*. at 60.

[34] *Id*.

the parties learned of the deed's true contents. Cosgrove owns fee simple title, and the opportunity for an equitable remedy expired with limitations.

A claim for breach of contract accrues when the contract is breached.[35] The Cades' breach of contract claim accrued when the deed was executed and is therefore barred by limitations. The Cades' argument that the breach occurred when Cosgrove later refused to execute a correction deed in contravention of the Acceptance of Title and Closing Agreements—a form prepared by the title company—fails because the Cades are charged with notice of the contents of their deed upon execution. By the time the Cades asked Cosgrove to reform the deed, limitations had expired, and the Cades could claim no right to Cosgrove's property. The Cades cannot circumvent the inapplicability of the discovery rule (and indefinitely toll limitations until the Cades demand a correction deed) simply by recasting their deed-reformation claim as a breach-of-contract claim.[36] To hold otherwise would circumvent the statute of limitations by allowing an open-ended breach of contract claim that would defy all that we hold today regarding (1) the inapplicability of the discovery rule to suits involving obvious omissions from the face of a deed, (2) the duty on the mineral interest owner to exercise diligence with regard to the contents of his own mineral interest, (3) the need for stability and certainty in deed records, and (4) our construction of section 13.002 as applying to the contents of deeds. Contract law and the attendant statute of limitations cannot be reduced to a few simple axioms, and an analysis of the contract claim must recognize that the

---

[35] *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

[36] The Cades admit that the conveyance of the minerals is the basis of their suit, and that they seek a declaration reforming the mineral interest conveyed in the deed.

agreement here is not just any contract, but one concerning a deed that expressly if erroneously conveyed a mineral interest.

The Cades were charged with notice—as a matter of law and upon execution of the deed—that the deed failed to retain their mineral rights. Allowing them to slumber on this knowledge, for years or decades or generations, before seeking a corrected deed is not a luxury we have recognized, and would render meaningless parties' recognized duty to exercise diligence in examining their mineral rights. To be "charged" with notice—as the law mandates—means there are consequences for failure to act on that notice. Hence, we disagree with the dissent insofar as it contends the Cades' contract claim for refusal to correct the deed is subject to a different limitations period. As a matter of law, the Cades were on notice at the time of execution of a fundamental and obvious error in the deed. They could have declined to close the deal until the deed was corrected. Or they could have closed, demanded immediate correction, and then treated any refusal as a breach of contract. Therefore, under either a contract theory or a deed-reformation theory, both of which have a four-year statute of limitations, the limitations period began to run at the execution of the deed.

The dissent imagines a disagreement over the existence of an enforceable contract. But our analysis nowhere holds, as the dissent implies, that these parties entered into an unenforceable real estate contract. We do not rely on the merger doctrine to hold that a contract to correct the deed was extinguished when the deed was executed, a position that would make no sense. The dissent's labored discussion of this doctrine is perplexing. We do not hold that signing a side agreement to correct errors in a deed is, under the merger doctrine, an invariably futile act because the agreement

12

is merged into and therefore extinguished by the deed itself. Our decision does not require this result, nor do we suggest approval of such a stringent rule.

The question before us is how long the Cades may sit on their putative contractual right to request material changes to an unambiguous deed on file in the courthouse. The dissent frets that in failing to see how a title company form upends our analysis of the statute of limitations issue, we are trampling on freedom of contract or elevating equitable rights over legal rights. We do not rely on equitable doctrines but rather recognize that contract rights are paired with contract responsibilities, including the statute of limitations, a legal doctrine. We simply disagree on when limitations began to run in this legal and factual context, and whether relying on a different closing document that was part of a single, routine real estate closing changes the limitations period, when the statute of limitations is four years for equitable reformation and four years for breach of contract.

The virtues of legal certainty and predictability are nowhere more vital than in matters of property ownership, an area of law that requires bright lines and sharp corners. The Cades, charged with instant knowledge of a significant and plainly obvious error in the deed, had four years to act on that knowledge, including under the correction agreement.

### D. Cosgrove's Claim for Attorney Fees

Before filing her counterclaim, Cosgrove wrote a letter to the Cades advising them that limitations barred the Cades' claims, and if the Cades brought suit, Cosgrove would seek attorney fees. Cosgrove did just that, citing sections 37.009 and 10.001 of the Civil Practice & Remedies Code, but the trial court denied the fee request, saying it would be "inequitable and unjust to award attorney's fees based on the facts in this lawsuit." The court of appeals, after ruling for the Cades

13

on the deed-reformation claim, overruled Cosgrove's fee request as moot. Given our holding today, the attorney-fee issue is no longer moot, and we remand it to the court of appeals.

### III. Conclusion

The Cades' subjective beliefs about the contents of the unambiguous deed are irrelevant for purposes of tolling the statute of limitations. The discovery rule does not apply to this mistaken omission, which was inherently discoverable and objectively verifiable. The Cades have been on notice of sufficient facts for any deed-related claims since the date of execution.

We reverse the court of appeals' judgment and render judgment that the Cades take nothing. We remand the issue of attorney fees to the court of appeals.

_____

Don R. Willett
Justice

**OPINION DELIVERED:** June 26, 2015

14