

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING OPINION

No. 04-17-00310-CV

**YATES ENERGY CORPORATION**, EOG Resources, Inc., Jalapeno Corporation, ACG3
Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., and Curry Glassell,
Appellants

v.

**BROADWAY NATIONAL BANK**, Trustee of the Mary Frances Evers Trust,
Appellee

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2015PC2618
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Marialyn Barnard, Justice
Concurring Opinion by: Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: December 19, 2018

### INTRODUCTION

I concur in the judgment because I agree with the majority's holding that "by including
only the signatures of the original parties to the 2005 Mineral Deed, and not the signatures of the
parties' heirs, successors, or assigns, the 2013 Amended Correction Deed did not comply with the
requirements of section 5.029 of the Code, and as a result, it did not replace the 2005 Mineral
Deed." I also agree that section 5.029 controls, and I reach the same conclusion as the majority,
but I do so using a markedly different construction.

In construing the statute, I recognize that "[e]ven when it appears the Legislature may have made a mistake, courts are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Tex Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 638 (Tex. 2010). But the statute's language is not "direct and clear," *see id.*, it is "capable of multiple interpretations," *see Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014), and the majority's construction could lead to absurd results, *see Tex Lottery Comm'n*, 325 S.W.3d at 635; *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (recognizing that we do not adopt an interpretation of the plain language if that "interpretation would lead to absurd results"). I write separately to present a different construction.

### STATUTORY CONSTRUCTION

Because the statute's plain language is capable of multiple interpretations, it is ambiguous, and we may apply the statutory construction aids. *See* TEX. GOV'T CODE ANN. § 311.023; *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015); *Crosstex Energy*, 430 S.W.3d at 390. Two aids are particularly helpful: the "object sought to be attained," and the "consequences of a particular construction." *See* TEX. GOV'T CODE ANN. § 311.023. By applying these two aids, we can easily discern the legislative intent. *See id.*; *Crosstex Energy*, 430 S.W.3d at 390.

Construing the statute as I outline below gives effect to the plain language, stays true to the object sought to be obtained, and does not create absurd results. *See* TEX. GOV'T CODE ANN. § 311.023; *Tex. Lottery Comm'n*, 325 S.W.3d at 635. I begin with the statute's plain language.

### A.      Statute's Plain Language

Subparagraph (a) provides the general rule:

In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction or the parties' heirs, successors,

or assigns, as applicable may execute a correction instrument to make a material correction to the recorded original instrument of conveyance . . .

TEX. PROP. CODE ANN. § 5.029(a).

Subparagraph (a) continues with examples of the types of permissible corrections. *Id.*

Subparagraph (b) provides instructions on how the correction instrument must be executed and recorded:

> A correction instrument under this section must be . . . executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and . . . recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id.* § 5.029(b).

When subparagraphs (a) and (b) are read together, as they must be, it is clear that (b)'s instruction that the correction instrument "must be . . . executed by each party to the original instrument . . . or, if applicable, a party's heirs, successors, or assigns" simply restates (a)'s general rule. *See id.* The majority interprets the plain language differently; to resolve the ambiguity, we can use the construction aids. *See* TEX. GOV'T CODE ANN. § 311.023; *Crosstex Energy*, 430 S.W.3d at 390

**B.      Object Sought to be Obtained**

The first aid is the "object sought to be obtained." *See* TEX. GOV'T CODE ANN. § 311.023(1). In its simplest form, the object sought to be obtained by the statute is clear: to allow a grantor and a grantee to fix an error in a recorded instrument, without involving the courts, if they both agree to the change. *See* TEX. PROP. CODE ANN. § 5.029(a).

For example, where A conveyed to B, but the conveying instrument contained a material defect, the provision allows A and B, acting together, to fix a mistake in the recorded original instrument. *See id.* A and B, "the parties to the original transaction," may fix a mistake by

"execut[ing] a correction instrument to make a material correction to the recorded original instrument of conveyance," if both A and B agree to the change. *See id.* § 5.029(b). If so, "[the] correction instrument . . . is executed by each party to the recorded original instrument of conveyance." *See id.*

For this simplest conveyance, A to B, the statute makes the object to be obtained perfectly clear: if all the parties to the original instrument agree to a material change, they can make the correction without resorting to the courts. *See id.*

With this object in mind, we consider a more complicated example that the statute also provides for. The statute recognizes that, over time, the property interests *may* have passed to others such as heirs, successors, or assigns. It identifies these others as "the parties' heirs, successors, or assigns, as applicable." *See id.* § 5.029(a). And for execution, it requires signatures from "each party to the recorded original instrument . . . or, if applicable, a party's heirs, successors, or assigns." *See id.* § 5.029(b).

In this more complicated example, as the simplest form makes clear, each party to the original instrument must sign the correction instrument. But if one now stands in the shoes of an original party as an heir, successor, or assign, then that heir, successor, or assign must execute the correction instrument in the stead of that party to the original instrument. *See id.* § 5.029(b). This construction stays true to the object sought to be obtained, and the consequences of this particular construction are not troubling.

## C.    Consequences of a Particular Construction

The second aid is "the consequences of a particular construction." *See* TEX. GOV'T CODE ANN. § 311.023(5). This aid illustrates the flaw in the majority's construction.

The majority's construction creates two mutually exclusive conditions for acceptable execution: all of the original parties, or, all of the original grantee's heirs, successors, or assigns, without the original grantor's signature.  Under the majority's view, an original grantee's successors could "correct" the original instrument of conveyance to give themselves greater interests than originally conveyed *without* the original grantor's signature.

In contrast, my construction requires all the parties to the original instrument, including the original grantor, or any who now stands in the shoes of an original party, to agree to the correction. To illustrate the difference in our constructions, I use two examples.

*1.      First example*

For the first example, assume A conveys an interest to B and the conveyance is properly recorded.  Later, A and B agree the original instrument of conveyance should be materially corrected.  Assume neither A nor B have any heirs, successors, or assigns.  To make the correction, the correction instrument must be "executed by each party to the recorded original instrument of conveyance," *see* TEX. PROP. CODE ANN. § 5.029(b), in this example A and B.[1]  Because neither A nor B has any "heirs, successors, or assigns," the "or, if applicable" alternatives do not apply, *see id.*, so only A and B must execute the correction instrument.  In this first example, the majority's construction and mine reach the same result.

---

[1] The correction instrument must also be properly recorded.  *See* TEX. PROP. CODE ANN. § 5.029(b)(2).

### 2. Second example

For the second example, assume A conveys an interest to B and C, and the conveyance is properly recorded. Later, C conveys to D and E the entire interest it received from A, and at present, D and E have not alienated the interest they received from C.[2] Now, a party wants to correct the original instrument of conveyance—the conveyance from A to B and C. Who must execute the correction instrument? Assume neither A nor B have any heirs, successors, or assigns with respect to A's conveyance to B and C.



The statute requires "each party to the recorded original instrument of conveyance" to execute the correction instrument, "or, if applicable, a party's heirs, successors, or assigns." *See id.* As "part[ies] to the recorded original instrument" without applicable "heirs, successors, or assigns," *see id.*, A and B must sign.

C was a party to the original instrument, but C conveyed to D and E the entire interest C received from A. Because D and E are C's successors, D and E are "applicable," and each must sign. Thus, under my construction of the statute's plain language, the correction instrument must be signed by A, B, D, and E.

### D. Majority's Construction

The majority's construction operates differently. The majority holds that a correction instrument "must be executed by a party's heirs, successors, or assigns *as opposed to* the original parties of the recorded instrument, if the property interest conveyed in the original instrument has

---

[2] At this point, of the original interest A conveyed to B and C, A and C hold nothing; B, D, and E each hold some portion.

been assigned or conveyed by an original party to that party's heirs, successors, or assigns." (emphasis added).

Applying the majority's holding to this example, B, D, and E must sign, but not A.  The majority's construction does not follow the statute's plain language which requires all the parties to the original instrument—or those who now stand in the original party's shoes—to sign the correction instrument.  The possible consequences of that construction are problematic.

**E.      Consequences of Majority's Construction**

Consider this hypothetical, using the diagram above, where all the property rights are in fee simple.  A owns 10,000 acres of land.  A conveys 3,000 acres to B and 3,000 acres to C.  C conveys half of its interest to D and half of its interest to E.  D and E discover that A still owns 4,000 acres not conveyed in the original instrument.

Applying the majority's construction, B, D, and E realize they may make a material correction to a recorded instrument to "add . . . land to a conveyance that correctly conveys other land," and they do not need A's signature on the correction instrument.  B, D, and E execute a "correction" instrument, record it as required, and much to A's surprise, now claim title to the 4,000 acres.  A might have recourse against B, D, and E under other statutes or common law, but eroding the "legal certainty and predictability . . . of property ownership" and increasing litigation are surely not the objects the legislature sought to obtain or the consequences it intended to result. *See Cosgrove v. Cade*, 468 S.W.3d 32, 40 (Tex. 2015) ("The virtues of legal certainty and predictability are nowhere more vital than in matters of property ownership, an area of law that requires bright lines and sharp corners.").

As this hypothetical illustrates, by straying from the clear rule of the simplest form—that all who signed the original instrument must agree to the change—the majority's construction undermines the object sought to be obtained and yields problematic consequences.

**CONCLUSION**

For the reasons given above, I concur in the judgment only because I respectfully disagree with the majority's construction of section 5.029.

Patricia O. Alvarez, Justice
