

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00330-CV

_____

WELLNESS AND AESTHETICS INSTITUTE, PA AND THE ESTATE OF
CONSTANTINE KOTSANIS, Appellants

V.

JB&B CAPITAL, LLC, Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-326811-21

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellee JB&B Capital, LLC (JB&B) sued Appellants Wellness and Aesthetics Institute, PA (the Institute) and the Estate of Constantine Kotsanis for breach of contract related to an Equipment Finance Agreement (Agreement) and accompanying personal guaranty. The trial court granted summary judgment in favor of JB&B on its claim against the Institute, and Appellants appealed. We will affirm.

## I. BACKGROUND

In April 2020, the Institute entered into the Agreement with JB&B so that the Institute could finance certain medical equipment. The Agreement was collateralized by the medical equipment. The sole member of the Institute, Dr. Constantine Kotsanis, personally guaranteed the Agreement. JB&B alleged that, starting in December 2020, both the Institute and Dr. Kotsanis defaulted on their respective contracts by failing to make the requisite payments. On March 14, 2021, Dr. Kotsanis died intestate.

On July 26, 2021, JB&B sued Appellants for breach of contract and conversion.[1] JB&B also requested injunctive relief to effectuate the surrender of the collateral by the Institute. The Institute and Ms. Kotsanis filed a plea to the

---

[1]JB&B asserts that it originally sued Dr. Kotsanis's estate because, at the time it filed the original petition, no proceedings had been instituted to probate the estate, and it thus had no named representative. However, the original petition alleged that his wife, Beverly Kotsanis, was "believed to be a beneficiary of Dr. Kotsanis's estate and shall be a party to this lawsuit in that capacity."

jurisdiction and motion to dismiss arguing that the probate court had exclusive jurisdiction over JB&B's claims. The trial court denied the plea and motion as to the Institute but granted it as to Dr. Kotsanis's estate, dismissing the claims against it.[2][3]

The trial court then granted JB&B its requested injunctive relief, and JB&B obtained and sold the collateral. But the amount realized from the sale did not satisfy the Institute's obligations under the Agreement. To recover this outstanding amount out of the Institute's remaining assets, JB&B again amended its petition to plead one claim of breach of contract against only the Institute.

JB&B then moved for summary judgment. The Institute responded that summary judgment was inappropriate because the trial court did not have subject matter jurisdiction over JB&B's claims and because Dr. Kotsanis's spouse and heirs were indispensable parties who had not been joined in the action. The crux of the Institute's arguments was that when Dr. Kotsanis—the sole member of the Institute—died, the Institute terminated[4] and all of its assets passed automatically to

---

[2]The Institute filed a petition for writ of mandamus with this court challenging that ruling, which we denied. *See In re Kotsanis*, No. 02-21-00288-CV, 2021 WL 4319603, at *1 (Tex. App.—Fort Worth Sept. 23, 2021, orig. proceeding) (mem. op.).

[3]After this ruling, JB&B amended its petition, naming both the Institute and Ms. Kotsanis as defendants. Ms. Kotsanis again filed a plea to the jurisdiction that raised the same jurisdictional arguments raised in this appeal. The trial court denied that plea.

[4]The record shows that, on January 6, 2022, the Texas Secretary of State issued a "Certificate of Filing" certifying that a conforming certificate of termination had

3

either his estate or to his surviving spouse and heirs. Thus, said the Institute, the spouse and heirs were indispensable parties and JB&B's action could only have been brought in the statutory probate court as that court had exclusive jurisdiction over all probate proceedings.

The trial court granted JB&B's motion for summary judgment and this appeal followed.

## II. DISCUSSION

Appellants raise four issues on appeal: that (1) summary judgment was improperly granted; (2) the trial court did not have subject matter jurisdiction because the statutory probate court had exclusive jurisdiction over the suit; (3) the trial court erred by failing to join indispensable parties to the suit; and (4) the trial court "fail[ed] to recognize that all assets and debt of [the Institute] became part of the probate estate of its sole member, Dr. Kotsanis."[5]

### A. SUMMARY JUDGMENT ISSUE INADEQUATELY BRIEFED

In their first issue, Appellants attempt to challenge "all the grounds on which the summary judgment could have been based." But Appellants waived appellate

---

been filed for the Institute. It is not clear on what date the certificate of termination had been filed.

[5]Although the trial court dismissed the claims against the estate before granting summary judgment against the Institute, the estate appears to take the position that any judgment against the Institute is a judgment against the estate.

4

review of this issue because they did not adequately brief it. Appellants' entire argument on this issue is so cursory that we quote it in its entirety:

> The Court has the ability to look to the Clerk's Record and look to the summary judgment response where Appellant raised issues that were not addressed by Appellee's motion for summary judgment. [Record Reference] Appellee did not address the following issues:
>
> a. Jurisdictional issue *Tex. Estates Code* § 32.005(a),
> b. Indispensable parties *Tex. Bus. Orgs. Code* § 101.1115(2),
> c. Assignment of membership interests in professional association *Tex. Bus. Orgs. Code* § 101.1115(2),
> d. Probate estate assets and debts *Tex. Bus. Orgs. Code* § 101.1115(2), and
> e. Grounds not specifically argued on appeal. *Stevens v. State Farm Fire & Casualty Co.*, 929 S.W.2d 665, 670 (Tex. App. 1996).

Appellants did not expound further on any of these points. And the only record reference made by Appellants is to the first page of JB&B's summary judgment motion.

An appellant's brief must contain "a clear and concise argument" that includes appropriate citations to legal authority and the appellate record. Tex. R. App. P. 38.1(i). "[A]ppellate courts have no duty—or even the right—to perform an independent review of the record and the applicable law to determine whether there was error; we cannot make the party's arguments for [hi]m, and then adjudicate the case based on the arguments we have made on [his] behalf." *Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *5 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (internal quotations omitted). While an appellant can raise a general challenge to the trial court's grant of summary judgment, "the appellant must

5

also support the issue *with argument and authorities* challenging each ground." *Rollins v. Denton Cnty.*, No. 02-14-00312-CV, 2015 WL 7817357, at \*2 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.) (emphasis added).

Appellants' perfunctory list of "arguments" was not adequate to raise this issue for our review; we cannot construct the arguments for them.[6] We overrule issue one.

### B. REMAINING ISSUES RELY ON ERRONEOUS PREMISE

We will consider issues two through four together because they all collapse upon Appellants' chief contention that, when Dr. Kotsanis—the sole member of the Institute—died, all Institute assets passed automatically to his surviving spouse, heirs, or estate. According to Appellants, because these assets now belong to his spouse, heirs, or estate rather than to the Institute, (1) the probate court had exclusive jurisdiction over JB&B's claims; (2) the spouse and heirs were indispensable parties to the suit; and (3) the trial court erred when it "fail[ed] to recognize" this fact. Appellants ground this argument on two provisions of the Texas Business Organizations Code: Sections 101.1115(a)(2) and 302.013.[7] Because this contention

---

[6]To the extent that Appellants' argument is based on their assertion that the Institute ceased to exist on Dr. Kotsanis's death and that all claims had to have been brought in the probate court—an argument that the trial court had already rejected and that we reject below—we would hold that the trial court did not err by granting summary judgment. This is the only specific argument raised in Appellants' response to JB&B's motion for summary judgment.

[7]Section 101.1115(a)(2) pertains to limited liability companies and provides that "on the death of a member, the member's surviving spouse, if any, and an heir, devisee, personal representative, or other successor of the member, to the extent of

6

does not comport with Texas law related to professional associations, we will overrule issues two through four.

## 1. Sections 101.1115(a)(2) and 302.013 Do Not Support Appellants' Position

Section 101.1115(a)(2), entitled "Effect of Death or Divorce on Membership Interest," is found within Title 3 of the Business Organizations Code, which pertains to limited liability companies, not professional associations. Tex. Bus. Org. Code Ann. Ch. 101.001. However, even if Section 101.1115(a)(2) were applicable to professional associations, it does not state that the assets of the company automatically pass to a deceased member's spouse, heirs, or estate, but, rather, that the deceased's spouse and heirs become *assignees of the membership interest* in the company. *Id.* § 101.1115(a)(2). This is true, of course, because the company is a separate legal entity from its members that can hold title to its own assets, even if the company has just a single member. *See Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 719 (Tex. App.—Eastland 2019, pet. denied); *see also* Tex. Bus. Orgs. Code Ann. § 2.101(3)

---

their respective membership interest, are assignees of the membership interest." Tex. Bus. Org. Code Ann. § 101.115(a)(2).

Section 302.013, entitled "Windup up and Termination; Certificate of Termination," provides that a professional association "may wind up and terminate the association's business as provided by" either the association's certification of formation or by a two-thirds vote of the association's members. *Id.* § 302.013. It further provides that a certification of formation "must be executed by an officer of the professional association on behalf of the association" and that, if the professional association has no living officer, the certification of termination "must be executed by the legal representative of the last surviving officer of the association." *Id.*

(explaining that a domestic entity has the power to "acquire, receive, own, hold, improve, use, and deal in and with property or an interest in property").

Further, Appellants cite Section 302.013 as standing for the proposition that "the professional association was terminated at [Dr. Kotsanis's] death by operation of law." But Section 302.013 says no such thing; it merely speaks generally about when a professional association may begin winding up its affairs and who may execute its certificate of termination. Tex. Bus. Org. Code Ann. § 302.013.

### 2. The Institute's Assets Did Not Automatically Pass to Dr. Kotsanis's Spouse, Heirs, or Estate Upon His Death

In clear contrast to Appellants' position, Texas law provides that professional associations continue to exist even after termination for the purposes of settling claims and disposing of property. *See id.* § 11.356(a). As alluded to above, professional associations—like other companies—are separate legal entities that hold title to their own assets, even if there is a single member. *See id.* §§ 2.101(3), 302.002(1); *Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999) (explaining that a professional association and its sole physician-member were "distinct legal entities"). Importantly, all domestic filing entities—which include professional associations, Tex. Bus. Org. Code Ann. § 1.002(22)—continue to exist for three years after termination to (1) defend against actions brought against the entity; (2) permit the survival of "existing claims" against the entity; (3) hold title to or liquidate property owned by the entity at the time of termination; (4) apply or distribute property to discharge

8

liabilities; and (5) settle other affairs not completed before termination. *Id.* § 11.356(a). An existing claim includes "a right to payment, damages, or property . . . that existed before the entity's termination and is not barred by limitations." *Id.* § 11.001(1), (3)(a). It is only after a domestic entity "has discharged, or made adequate provision for the discharge of, all of its liabilities and obligations" that it may then "distribute the remainder of its property, in cash or in kind," to its individual owners. *Id.* § 11.053(c). An entity's termination is effective "on the filing of a certificate of termination." *Id.* § 11.102.

JB&B's breach-of-contract claim constituted an existing claim for which the Institute continued to exist even beyond its termination. At some point, a certificate of termination was filed on behalf of the Institute, and the Texas Secretary of State acknowledged the certificate's receipt and legal conformity on January 6, 2022. Though it is not clear when the certificate of termination was filed for purposes of determining the termination date of the Institute, the exact date is of little significance here. It is undisputed that the Institute was not terminated until after Dr. Kotsanis's death on March 14, 2021. Thus, for our purposes, JB&B's claim constituted an "existing claim" against the Institute because it first arose in December 2020— undoubtedly before the Institute's termination—when the Institute first stopped paying under the Agreement. *See Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015) ("A claim for breach of contract accrues when the contract is breached."). And JB&B initiated its suit against the Institute on July 26, 2021, well within the statute of

9

limitations period for breach-of-contract claims. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 (Tex. 2011) (explaining that breach-of-contract claims have a four-year statute of limitations).

Thus, there is no doubt that the Institute continued to exist for the purposes of holding its property and settling any existing claims, even after it was terminated. The Institute's property did not, as Appellants argue, pass automatically to Dr. Kotsanis's spouse, heirs, or estate. We overrule Appellants' second, third, and fourth issues.

### III. CONCLUSION

Having overruled all of Appellants' issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: July 27, 2023