

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-24-00699-CV

**ENCINO RANCH HOMEOWNERS ASSOCIATION, INC.**,
Appellant

v.

Sergio **SANTOS**, Anne Santos, Billy Limmer, Brendan M. Hiers, Karen R. Hiers,
Miguel Carrillo, Vanessa Martin Del Campo, Mohammad Afzal Siddiqui, Rehana P. Siddiqui,
and Randy Mulholland,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-05624
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:       Adrian A. Spears II, Justice
               H. Todd McCray, Justice
               Velia J. Meza, Justice

Delivered and Filed: January 7, 2026

REVERSED AND REMANDED

In this permissive appeal, a homeowners association challenges an interlocutory ruling that

its declaratory judgment claim was barred by the statute of limitations. We hold the association's

claim did not accrue until an actual controversy existed, and therefore, the claim was not barred

by limitations. We reverse and remand.

**BACKGROUND**

The Encino Ranch Homeowners Association, Inc., oversees the Encino Ranch Subdivision, which is a residential real estate development that follows a general scheme of plan development. The subdivision is divided into four units, which were developed in phases.

On March 13, 1998, the original developers recorded a plat for the Encino Ranch Subdivision, Unit 1, in the Bexar County records of deeds and plats. On September 28, 1998, the subdivision's original developers executed and filed a declaration of covenants, conditions, and restrictions for Encino Ranch, Unit 1, in the Bexar County real property records. This declaration stated that additional properties in Units 2, 3, and 4 may be brought into the scheme and may be subject to the original declaration through the recording of an appropriate instrument—an annexation document—in the real property records.

Between April 30, 1999, and April 11, 2002, the original developers recorded plats for Encino Ranch Subdivision, Units 2, 3, and 4. These units were subsequently developed and lots contained therein were sold to various property owners.

On December 6, 2001, the original developers conveyed to a successor developer the remaining property in the subdivision along with the declarant rights.

On September 5, 2003, the successor developer filed a purported annexation document—a declaration of covenants, conditions, and restrictions for Encino Ranch Subdivision, Units 2, 3, and 4. However, when the successor developer recorded the purported annexation document, it no longer owned the properties contained in these units because they had already been conveyed. Because the successor developer did not own the properties when it recorded the annexation document, the annexation was defective.

On March 17, 2020, the Association filed suit against property owners in Units 2, 3, and 4 of the subdivision, seeking a declaration that they were bound by the original declaration's restrictions, conditions, and covenants under the doctrine of implied reciprocal negative easements.

In response, seven property owners[1] ("the appellees") filed an answer generally denying the allegations in the Association's petition and asserting the affirmative defense of limitations. The appellees alleged that the Association's claim accrued either when the purported annexation document was filed in the property records on September 5, 2003, or when its management company learned of the failure to timely file annexation documents for Units 2, 3, and 4 in the real property records "in or around 2003." They further alleged "it has been significantly more than four years since the issue that [the Association] complains of has occurred, and also significantly more than four years since [the Association] discovered the error."

The Association countered that no limitations statute applied to its declaratory judgment claim. Alternatively, the Association argued that even if a four-year statute of limitations applied to its claim, its claim did not accrue until June 2019, when the Association sent notices to the appellees asking them to sign consent to annexation forms and they refused to do so.

After a bench trial on stipulated facts, the trial court determined that the Association's declaratory judgment claim was barred by limitations and denied the Association's claim for declaratory relief based on limitations.[2] The trial court signed an amended interlocutory order granting the Association permission to appeal the limitations ruling. *See* TEX. CIV. PRAC. & REM.

---

[1]Sergio Santos, Anne Santos, Billy Limmer, Brendan M. Hiers, Karen R. Hiers, Miguel Carrillo, Vanessa Martin Del Campo, Mohammad Afzal Siddiqui, Rehana P. Siddiqui, and Randy Mulholland.

[2]The trial court's interlocutory order does not determine the exact accrual date. The parties' stipulated facts state that the purported annexation document was filed in the real property records on September 5, 2003, and that the Association's management company learned of the defect in filing the annexation document "in or around 2003."

CODE § 51.014(d). The Association filed a petition for permissive appeal in this court, which we granted.

## SCOPE OF PERMISSIVE APPEAL

A trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if (1) the order to be appealed from involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id*. "In a permissive appeal, we limit our review to the controlling legal question on which there is a substantial ground for disagreement and for which immediate resolution may materially advance the litigation." *Harbor Am. Cent., Inc. v. Armand*, 692 S.W.3d 777, 781 (Tex. App.—San Antonio 2024, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE § 51.014(d); TEX. R. APP. P. 28.3(e)(4); TEX. R. CIV. P. 168.

In this case, the controlling questions of law identified in the trial court's order are: (1) whether a statute of limitations applies to the Association's declaratory judgment claim; and (2) if it does, whether the limitations period began to run in 2003 when the Association's management company learned of the failure to timely file the annexation documents in the real property records, or in June 2019 when the appellees refused to sign the consent to annexation form. Our review is limited to these issues. The merits of the Association's claim are beyond the scope of this appeal.

## STANDARD OF REVIEW

The trial court made its limitations ruling during a bench trial on stipulated facts held in accordance with rule 263 Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 263. In a rule 263 case, appellate review "is limited to consideration of those agreed facts." *Addison Urban Dev. Partners, LLC v. Alan Ritchey Materials Co., LC*, 437 S.W.3d 597, 600 (Tex. App.—Dallas 2014,

no pet.). "Such a review is less deferential to the trial court, because a trial court has no discretion in deciding what the law is or in properly applying it." *Id*. (internal quotation marks omitted). "There are no presumed findings in favor of the judgment in a case submitted under rule 263 because the trial court had no factual issues to resolve." *Patterson-UTI Drilling Co. LP, LLLP, v. Webb Cty. Appraisal Dist.*, 182 S.W.3d 14, 17 (Tex. App.—San Antonio 2005, no pet.). "The only issue to resolve on appeal is whether the trial court correctly applied the law to the agreed facts." *Id*. "Our review is de novo in an agreed case because the issue before us is purely a question of law." *Id*.

### ANALYSIS

On appeal, the Association contends the trial court's limitations ruling was erroneous for two reasons. First, it contends that no statute of limitations applies to a declaratory judgment claim concerning the existence of an implied reciprocal negative easement. Second, it contends that even if a four-year statute of limitations applies to its claim, its claim did not accrue until an actual controversy arose between the parties in June 2019.

The appellees counter that the trial court's limitations ruling was correct. According to the appellees, a four-year statute of limitations applies to the Association's claim, and the caselaw "makes clear that when determining the start of an applicable limitations period in an action which involves the filing/recording of a document in the public records, the limitations period starts upon the filing of that document." The appellees argue on appeal that "the statute of limitations began to run when the [purported annexation] document was filed on September 5, 2003, and expired on or about September 4, 2007."

An understanding of the Association's declaratory judgment claim is essential to our analysis. The purpose of the Uniform Declaratory Judgments Act "is to settle and to afford relief

from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." TEX. CIV. PRAC. & REM. CODE § 37.002(b). In its suit, the Association sought a declaration that the appellees were subject to the original declaration's restrictions, conditions, and covenants under the doctrine of implied reciprocal negative easements.

In *Evans v. Pollock*, the Texas Supreme Court approved of the following statement of the doctrine:

> [W]here a common grantor develops a tract of land for sale in lots and pursues a course of conduct which indicates that he intends to inaugurate a general scheme or plan of development for the benefit of himself and the purchasers of the various lots, and by numerous conveyances inserts in the deeds substantially uniform restrictions, conditions and covenants against the use of the property, the grantees acquire by implication an equitable right . . . to enforce similar restrictions against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants.

796 S.W.2d at 465, 466 (Tex. 1990).

Later, the Texas Supreme Court summarized the doctrine of implied reciprocal negative easements as follows:

> Restrictive covenants are commonly used in both residential and commercial developments to maintain the character of the neighborhood in accordance with the development plan and to enhance property values. *Davis v. Huey*, 620 S.W.2d 56, 565 (Tex. 1981). For example, a developer may burden lots with restrictions on use (e.g., residential only), minimum square-footage requirements, and minimum setback requirements. "The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots." *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) (citation omitted).

> In the absence of an express restriction on a particular lot, one may be created by implication in narrow circumstances. We have recognized that the doctrine of "implied reciprocal negative easements"—or what the Restatement calls, perhaps more accurately, implied reciprocal servitudes—can apply "when an owner of real property subdivides it into lots and sells a substantial number of those lots with [express] restrictive covenants designed to further the owner's general

plan or scheme of development." *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). In that circumstance, the lots retained by the owner, and those sold without the express restrictions to a grantee "with notice of the restrictions in the other deeds," are subject to the same covenants burdening the lots sold with the express restrictions. *Id*.

*River Plantation Cmty. Imp. v. River Plantation Properties*, 698 S.W.3d 226, 231-232 (Tex. 2024).

### 1. Does a Statute of Limitations Apply to the Association's Claim?

At oral argument, the Association essentially conceded its first contention, acknowledging that its declaratory judgment claim under the doctrine of implied reciprocal negative easements was governed by the four-year residual statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.051. Section 16.051 of the Texas Civil Practice and Remedies Code provides:

> Every action for which there is no express limitations period, *except an action for the recovery of real property*, must be brought not later than four years after the day the cause of action accrues.

TEX. CIV. PRAC. & REM. CODE § 16.051 (emphasis added). The Association's claim does not fall under the statute's exception. The phrase "an action for the recovery of real property" means an action seeking to regain possession or title to real property. *Benham v. Benham*, 726 S.W.2d 618, 622 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) ("To be an action for the recovery of lands within the exception to the four-year statute of limitation, the title asserted must be one that will support an action in trespass to try title."). The Association's declaratory judgment claim regarding the applicability of the doctrine of implied reciprocal negative easements is not an action to regain possession or title to real property. We hold that the four-year residual limitations statute applies to the Association's declaratory judgment claim. *See* TEX. CIV. PRAC. & REM. CODE § 16.051.

## 2. When Did the Association's Claim Accrue?

Having determined that the four-year residual statute of limitations applies to the Association's declaratory judgment claim, we must now determine when the limitations period began to run in this case.

The statute of limitations is an affirmative defense, which the appellees had the burden to plead and prove. TEX. R. CIV. P. 94; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). To establish their limitations defense, the appellees had to prove: "(1) the date on which the limitations period commenced, i.e., when the cause of action accrued, and (2) that the plaintiff filed its petition outside the applicable limitations period." *Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.). Determining when a cause of action accrues is a question of law. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 274-75 (Tex. 2004).

"Generally, a cause of action accrues and limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Denman*, 362 S.W.3d at 144. "However, a cause of action under the Declaratory Judgment[s] Act does not accrue until there is an actual controversy between the parties." *Id.*; *Outlaw v. Bowen*, 285 S.W.2d 280, 284 (Tex. App.—Amarillo 1955, writ ref'd n.r.e.) ("In Texas the statutes of limitation do not apply . . . to a suit for a declaratory judgment, at least until the provisions of such are set in action by the actual occurrence of a controversy."). "Until an actual controversy has arisen between the parties no cause for declaratory relief has accrued and the statute of limitations is not operative." *Murphy v. Honeycutt*, 199 S.W.2d 298, 299 (Tex. Civ. App.—Texarkana 1946, writ ref'd). "However, when such a dispute or controversy does arise then a cause of action for a declaration of rights accrues and that is when the statute of limitations, but not until then, will begin to run." *Id.*

In *Murphy*, heirs filed a declaratory judgment claim for construction of a will thirteen years after the will was probated. *Id*. at 298. The heirs sought a declaration that the will gave the decedent's wife a life estate rather than fee simple title to certain real property. *Id*. The heirs did not file their suit until the wife attempted to sell the real property. *Id*. The court of appeals upheld the trial court court's ruling that the heirs' declaratory judgment claim was not barred by the four-year statute of limitations. *Id*. at 299. It reasoned that there was no actual controversy about the terms of the will until the wife tried to sell the real property. *Id*. The heirs "had no cause of action, and none accrued to them until [the wife] did some overt act showing that she was not going to abide by the terms of the will, as construed by [the heirs]." *Id*.

Courts have applied this accrual rule for declaratory judgment claims in a variety of contexts. *See Vann v. Homeowners Ass'n for Woodland Park of Georgetown, Inc.*, No. 03-18-00201-CV, 2018 WL 4140443, at *7 (Tex. App.—Austin Aug. 30, 2018, no pet.) ("We conclude that an actual controversy did not arise between the Vanns and the HOA until the HOA began sending the Vanns notices that they were required to store their trash containers out of view . . . . Nothing in the record before us indicates that the Vanns had notice that the HOA would attempt to enforce the Rules and Regulations against them until the HOA began sending them notices, which undisputedly occurred less than four years before the Vanns filed suit."); *Estate of Florence*, 307 S.W.3d 887, 893 (Tex. App.—Fort Worth 2010, no pet.) ("The Heirs' declaratory judgment action did not begin to accrue until [the Executor] asserted his interpretation of 'tangible property,' thereby demonstrating that he was not going to abide by the Heirs' construction of [the] Will."); *Hornbeck v. Moran*, No. 05-96-1127-CV, 1998 WL 315624, at *4 (Tex. App.—Dallas June 17, 1998, pet. denied) (not designated for publication) ("[W]e conclude that Moran's cause of action did not accrue until after Mary's death when the Hornbecks refused to acknowledge her remainder

interest in her father's estate based on her interpretation of her father's will."); *Dessommes v. Dessommes*, 543 S.W.2d 165, 169 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.) ("[I]t is apparent that Mrs. Dessommes' cause of action against Mr. Dessommes for a partition and recovery of retirement benefits did not accrue before payment became due under the retirement plan and were paid on August 1, 1969. It was at that time that she was first entitled to have a judgment against him as a party liable to make reparation to her. Prior to that time, Mr. Dessommes possessed nothing belonging to her and was not liable to her for payment of retirement benefits or liable to her for any reason shown by the record; she was not required to cross a bridge before she reached it.").

To support their argument that the statute of limitations accrued in 2003, the appellees cite *Cosgrove v. Cade*, 468 S.W.3d 32, 35 (Tex. 2015), which involved a declaratory judgment claim seeking reformation of a deed. In 2006, the grantors executed a deed that mistakenly failed to reserve mineral rights, even though the parties had agreed that the mineral rights would be reserved by the grantors. The grantors did not sue the grantee to reform the deed until 2011, which was beyond the four-year statute of limitations. The Texas Supreme Court held that the discovery rule[3] did not apply to the grantors' deed reformation claim and that the claim was barred by the statute of limitations. *Id*. at 36-37. "Parties are charged as a matter of law with knowledge of an unambiguous deed's material omissions from the date of its execution, and the statute of limitations begins to run from that date." *Id*. at 37. "[T]he [grantors] cannot claim they acted with reasonable diligence when they failed to notice a plain mistake when executing their deed . . . ." *Id*. at 39.

---

[3]The discovery rule "defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury." *Cosgrove*, 468 S.W.3d at 36.

The appellees' reliance on *Cosgrove* and other deed reformation cases is misplaced. Unlike the situation in *Cosgrove*, the Association did not convey the properties in question, and it did not execute a deed with a material omission. More fundamentally, unlike the grantors in *Cosgrove*, the Association does not seek to reform the defective annexation document filed in the real property records. Instead, the Association seeks a declaration that the appellees are bound by the covenants, conditions, and restrictions in the original declaration without reference to the annexation document and under an independent legal theory—the doctrine of implied reciprocal negative easements. *See River Plantation*, 698 S.W.3d at 232 (recognizing that even in the absence of an express restriction, one may be created by implication). We reject the appellees' argument that the Association's claim is one for document reformation or correction. We hold that the Association's claim based on the doctrine of implied reciprocal negative easements did not accrue when the defective annexation document was filed on September 5, 2003, or when the Association's management company became aware of the defective annexation document "in or around 2003."

The Association contends, and we agree, that its declaratory judgment claim did not accrue until an actual controversy arose between the parties. *See Denman*, 362 S.W.3d at 144; *Murphy*, 199 S.W.2d at 299. The parties' stipulated facts show that all but one of the appellees were notified of the subdivision's covenants, conditions, and restrictions when they purchased their properties. The remaining appellee was notified of the covenants, conditions, and restrictions when he obtained a home equity loan on his property.[4] Furthermore, each of the appellees attended at least

---

[4]Specifically, the stipulated facts state that, prior to closing on their properties, the appellees were provided a title commitment listing the restrictive covenants the title company believed were applicable to their properties and corresponding to the information in the original declaration. Additionally, at closing, six of the appellees were presented with a document entitled "Planned Unit Development Rider" as an amendment or supplement to their deed of trust, which states that the respective property is part of a planned unit development known as Encino Ranch. The planned unit development riders require the appellees to perform all obligations under the original declaration. One

one Association meeting and paid at least one of the assessments imposed under the original declaration. Nothing indicated that there was any dispute about whether the appellees' properties were bound by the covenants, conditions, and restrictions in the original declaration. A controversy about the application of the subdivision's covenants, conditions, and restrictions to the appellees' properties did not arise until the appellees refused to sign consent to annexation forms in June 2019. *See Florence*, 307 S.W.3d at 892 (holding heirs' declaratory judgment claim did not accrue until executor asserted his interpretation of decedent's will thereby demonstrating he was not going to abide by heirs' interpretation of decedent's will); *Murphy*, 199 S.W.2d at 299 (holding declaratory judgment claim did not accrue until wife did some overt act showing she was not going to abide by will's terms as construed by heirs). We hold that the Association's declaratory judgment claim accrued and the statute of limitations began to run in June 2019. *See Florence*, 307 S.W.3d at 892; *Murphy*, 199 S.W.2d at 299.

The Association filed its declaratory judgment claim on March 17, 2020, which was less than four years after its claim accrued. Accordingly, the trial court erred in ruling that the Association's declaratory judgment claim was barred by limitations.

## CONCLUSION

We reverse the trial court's amended interlocutory order and remand this case to the trial court for proceedings consistent with this opinion.

Adrian A. Spears II, Justice

---

appellee did not acquire his property through purchase; however, when he obtained a home equity loan in 2016, he signed a document similar to the planned unit development rider.